# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-70008

United States Court of Appeals
Fifth Circuit

**FILED**

May 20, 2019

Lyle W. Cayce
Clerk

EDWARD LEE BUSBY,

       Petitioner–Appellant,

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

       Respondent–Appellee.

---

Appeal from the United States District Court
for the Northern District of Texas

---

ON PETITION FOR REHEARING EN BANC

Before OWEN, GRAVES,* and HIGGINSON, Circuit Judges.

PRISCILLA OWEN, Circuit Judge.

We treat Edward Lee Busby's petition for rehearing en banc as a petition for panel rehearing pursuant to Fifth Circuit Internal Operating Procedures under Federal Rule of Appellate Procedure 35. Busby's petition for rehearing is DENIED. The opinion in No. 15-70008, issued June 13, 2018, and reported at 892 F.3d 735, is hereby WITHDRAWN, and the following opinion is ISSUED in its place.

---

* Concurring in the judgment only.

No. 15-70008

Edward Lee Busby seeks federal habeas corpus relief, asserting three claims: that (1) he is intellectually disabled and therefore ineligible for execution under *Atkins v. Virginia*,[1] (2) he received ineffective assistance of counsel on direct appeal, and (3) his trial counsel was ineffective by failing to conduct an adequate sentencing investigation or by failing to present an adequate mitigation case during the penalty phase of trial.  The district court denied relief.  We affirm the district court's judgment.

## I

Edward Lee Busby was arrested and charged for the January 2004 kidnapping, robbery, and murder of a seventy-eight-year-old woman, Laura Crane.[2]  Evidence at trial reflected that Busby and a female accomplice, Kathleen "Kitty" Latimer, abducted Crane from a grocery store parking lot in Texas, placed her in the trunk of her vehicle, and drove to Oklahoma.[3]  Busby admitted to authorities that he wrapped twenty-three feet of duct tape around Crane's face.  Crane's death was caused by asphyxiation.[4]  According to a medical examiner, Crane was bound with such force that her nose deviated from its normal position.[5]  Though Busby admitted his involvement in the crime, he denied that he intended to kill Crane.[6]  At trial, Busby's counsel twice attempted to introduce statements attributed to Latimer that potentially

---

[1] 536 U.S. 304, 321 (2002) ("Construing and applying the Eighth Amendment in the light of our 'evolving standards of decency,' we . . . conclude that [the death penalty] is excessive and that the Constitution 'places a substantive restriction on the State's power to take the life' of a mentally retarded offender.").

[2] *Busby v. State*, 253 S.W.3d 661, 663-64 (Tex. Crim. App. 2008), *cert. denied*, 555 U.S. 1050 (2008).

[3] *Id.* at 664-65.

[4] *Id.* at 663-64

[5] *Id.* at 664.

[6] *Id.*

supported Busby's contention that he did not intend to kill his victim, but these statements were excluded by the trial court.[7]  The jury found Busby guilty.[8]

During the penalty phase of the trial, the jury determined that Busby posed a future risk of dangerousness to society and that no mitigating factors warranted a life sentence.[9]  These findings required the trial court to sentence Busby to death.[10]  Busby appealed, but his appellate counsel did not challenge the exclusion of Latimer's potentially exculpatory statements.[11]  The Texas Court of Criminal Appeals (TCCA) affirmed,[12] and the Supreme Court denied Busby's petition for certiorari.[13]

In Busby's first state habeas petition,[14] his appointed state habeas counsel initially asserted an ineffective-assistance-of-trial-counsel (IATC) claim regarding the adequacy of trial counsel's mitigation investigation.[15]  The TCCA granted state habeas counsel funding to perform an independent mitigation investigation.[16]  Invoices indicate that state habeas counsel's mitigation investigator conducted interviews of several people, including Busby's two sisters and mother.[17]

Six months after the filing of Busby's petition, his state habeas counsel withdrew the IATC claim, informing the TCCA that he was "convinced that

---

[7] *Busby v. Stephens*, No. 4:09-CV-160-O, 2015 WL 1037460, at *11-13 (N.D. Tex. Mar. 10, 2015).

[8] *Busby*, 253 S.W.3d at 663.

[9] *Id.*; ROA.867-68.

[10] *Busby*, 253 S.W.3d at 663.

[11] *See generally id.*

[12] *Id.* at 673.

[13] *Busby v. Texas*, 555 U.S. 1050 (2008).

[14] *See Ex parte Busby*, No. WR-70,747-01, 2009 WL 483096 (Tex. Crim. App. Feb. 25, 2009) (per curiam) (unpublished).

[15] ROA.2165.

[16] *Busby v. Stephens*, No. 4:09-CV-160-O, 2015 WL 1037460, at *14 (N.D. Tex. Mar. 10, 2015).

[17] *See* ROA.3232-33.

adequate pretrial mitigation was conducted because no significant additional mitigating evidence would have been discovered."[18]  The TCCA dismissed the petition.[19]

Busby then filed a federal habeas corpus petition pursuant to 28 U.S.C. § 2254.[20]  This petition alleged seven claims, including for the first time claims that: (1) Busby's death sentence violates the Eighth Amendment because he suffers from an intellectual disability (the term more recently used by the Supreme Court in describing the condition that *Atkins* denominated "mental retardation"),[21] (2) Busby received ineffective assistance from direct appeal counsel due to the failure to challenge the trial court's exclusion of Latimer's statements, and (3) Busby received ineffective assistance of trial counsel because of counsel's alleged failure to conduct a reasonable mitigation investigation.[22]

The district court stayed Busby's federal habeas petition to permit exhaustion of claims that had not previously been presented in state court.[23] Busby filed a subsequent state habeas petition, which the TCCA dismissed as an abuse-of-the-writ.[24]  Busby then returned to federal court.[25]

The district court afforded Busby the opportunity to present mitigation and other evidence at a hearing, but Busby did not identify any witnesses and

---

[18] ROA.1551.

[19] *Ex parte Busby*, 2009 WL 483096, at *1.

[20] ROA.696-1369, 2343-3092.

[21] *See, e.g.*, *Hall v. Florida*, 134 S. Ct. 1986, 1990 (2014) ("Previous opinions of this Court have employed the term 'mental retardation.'  This opinion uses the term 'intellectual disability' to describe the identical phenomenon.").

[22] ROA.696-858; 2343-2524.

[23] *Busby v. Stephens*, No. 4:09-CV-160-O, 2015 WL 1037460, at *2 (N.D. Tex. Mar. 10, 2015); ROA.1877.

[24] *Ex Parte Busby*, No. WR-70,747-02, 2013 WL 831550, at *1 (Tex. Crim. App. Mar. 6, 2013) (per curiam) (unpublished); ROA.2323-24.

[25] *See Busby*, 2015 WL 1037460, at *2.

offered only arguments of counsel.[26]  The district court denied relief.[27]  The court concluded that Busby's *Atkins* claim was procedurally defaulted and did not satisfy the federal miscarriage-of-justice or actual-innocence exceptions to procedural default.[28]  The district court further declined to excuse Busby's procedural default of the claim that he received ineffective assistance of counsel in his direct appeal.[29]  The federal district court also concluded that some of the mitigation evidence presented in Busby's habeas petition was duplicative of evidence presented to the jury during his trial, and that, on balance, had the jury heard all of the mitigation evidence and weighed it against the aggravating evidence, there was no reasonable probability that at least one juror would have struck a different balance and would have answered the special issues submitted in the sentencing phase differently.[30]  We granted a certificate of appealability on all three claims.[31]

## II

We first consider Busby's *Atkins* claim and begin with an overarching summary of our conclusions regarding that claim.  Busby was convicted in November 2005, three years after the Supreme Court's seminal decision in *Atkins*.[32]  He had retained a psychologist and mental health expert, Timothy Proctor, Ph.D., who was a defense witness at his state-court trial.  Proctor administered two IQ tests, on which Busby scored 77 and 81, respectively.  Proctor testified that the score of 77 placed Busby in approximately the bottom sixth percentile, meaning that 94% of the population had a higher IQ than

---

[26] *See* ROA.3366-3400.
[27] *Busby*, 2015 WL 1037460, at *28; ROA.3358.
[28] *Busby*, 2015 WL 1037460, at *18-21.
[29] *Id.* at *16-18.
[30] *Id.* at *12-14.
[31] *Busby v. Davis*, 677 F. App'x 884, 893 (5th Cir. 2017) (per curiam) (unpublished).
[32] *Atkins v. Virginia*, 536 U.S. 304 (2002).

Busby,[33] but that Busby was not intellectually disabled.[34]  Busby made no claim before or during that trial, on direct appeal, or in his first state habeas corpus application that he is intellectually disabled or that any of his counsel had been ineffective in failing to investigate or pursue such a claim.

The *Atkins* claim was first presented in Busby's federal habeas petition. Busby argued that the evidence presented in that petition "proves by a preponderance of the evidence that he has mild mental retardation."[35] The federal district court stayed proceedings to permit Busby to present the claim to a state court.[36]  Because the *Atkins* claim was raised in state court in a second habeas petition and could have been presented in the first state habeas proceeding, Texas law required the TCCA to treat the claim as a successive habeas petition.[37]  Busby asserted that he was actually innocent of the death penalty under article 11.071, section 5(a)(3) of the Texas Code of Criminal Procedure,[38] which essentially embodies the elements of the federal actual-innocence standard as set forth in *Sawyer v. Whitley*.[39]  The TCCA denied the *Atkins* claim without an evidentiary hearing,[40] and Busby has not challenged the lack of a hearing.

After the TCCA rejected his *Atkins* claim, Busby relied on the evidence attached to his federal habeas petition.  It largely, but not entirely, mirrored the evidence presented to the TCCA.  In his second amended petition for

---

[33] 36 RR 55-56.

[34] 36 RR 64; *Busby*, 2015 WL 1037460, at *10.

[35] ROA.820.

[36] ROA.1877.

[37] *See Ex parte Blue*, 230 S.W.3d 151, 156 (Tex. Crim. App. 2007); TEX. CODE CRIM. PRO. ANN. Art. 11.071, § 5(a) (West Supp. 2018).

[38] TEX. CODE CRIM. PRO. ANN. Art. 11.071, § 5(a)(3) (West Supp. 2018).

[39] 505 U.S. 333, 336 (1992).

[40] *See Ex parte Busby*, No. WR-70,747-02, 2013 WL 831550, at *1 (Tex. Crim. App. Mar. 6, 2013) (per curiam) (unpublished).

habeas relief in federal district court following the TCCA's denial of relief, Busby addressed only the factual underpinnings of his *Atkins* claim.[41]  He affirmatively relied upon the TCCA's decision in *Ex parte Briseño*,[42] citing it as authoritative throughout his briefing on the *Atkins* claim.[43]  Though he asserted that the TCCA had ruled on the merits in denying the *Atkins* claim,[44] Busby did not argue in his briefing in the federal district court that the TCCA's decision was based on an "unreasonable application of clearly established Federal law."[45]  Although he has forfeited such a claim by failing to raise it in the federal district court, we review the TCCA's decision under § 2254(d)(1), out of an abundance of caution.

Busby has retained at least four mental health experts during the course of his trial and post-conviction proceedings.  None of them has diagnosed Busby as intellectually disabled or opined that he is intellectually disabled.  Only counsel has offered that opinion.  His expert witness at the trial resulting in his conviction and sentencing testified that Busby is not intellectually disabled. Busby's second state habeas petition and his federal habeas petition attach reports from three other experts, mental health literature, and affidavits or declarations containing information about Busby's childhood and life.  The record reflects several IQ scores, one of which resulted in a full-scale IQ score of 81.[46]  The TCCA's decision was not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[47]

Clearly established federal law is not violated or misapplied when a state

---

[41] ROA.2462-2493.

[42] 135 S.W.3d 1 (Tex. Crim. App. 2004).

[43] ROA.2462-2477.

[44] ROA.2492.

[45] 28 U.S.C. § 2254(d)(1).

[46] ROA.2453.

[47] 28 U.S.C. § 2254(d)(2).

court requires an inmate, convicted after *Atkins*, who presents an *Atkins* claim in a second, successive state habeas petition to show by clear and convincing evidence that "no reasonable juror [or factfinder] would have found him eligible for the death penalty."[48]  Stated another way, when a reasonable factfinder could conclude from the evidence Busby presented that he is not intellectually disabled, a state court has not violated clearly established federal law.  Under federal law, if an actual-innocence claim were presented in a successive federal habeas petition, a clear-and-convincing-evidence standard would be applied.[49]  Federal law does not require states to apply a less demanding standard in a successive state habeas proceeding.  Alternatively, applying a preponderance-of-the-evidence standard, the TCCA's decision was not based on an unreasonable determination of the facts in light of the evidence presented to it.  No expert has ever opined that Busby is intellectually disabled.

The TCCA's disposition of the *Atkins* claim withstands scrutiny under AEDPA.[50]

## A

The only state court to have considered Busby's *Atkins* claim was the TCCA.  The claim was presented to that court in a second application for habeas relief, and the Texas court denied relief in a brief written order.  The Supreme Court has held that "[a] federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the

---

[48] S*ee Sawyer v. Whitley*, 505 U.S. 333, 349 (1992) (holding that to establish actual innocence, a petitioner must show "by clear and convincing evidence that but for constitutional error, no reasonable juror would find him eligible for the death penalty"); TEX. CODE CRIM. PRO. ANN. Art. 11.071, § 5.03(a)(3) (West Supp. 2018).

[49] *See* 28 U.S.C. § 2244(b)(2)(B)(ii); *McQuiggin v. Perkins*, 569 U.S. 383, 395-96 (2013).

[50] 28 U.S.C. § 2254(d)(1), (2).

judgment."[51]   The federal district court concluded that Busby's *Atkins* claim was procedurally defaulted.   Busby takes issue with this conclusion, contending that the TCCA's ruling was a merits decision.  We agree.  The state court's decision regarding the *Atkins* claim was not independent of the federal question, and it necessarily entailed an assessment of the facts presented in support of the *Atkins* claim.  It was a decision on the merits within the meaning of AEDPA.

The TCCA's order denying relief on the claims set forth in Busby's second state habeas application said, "we dismiss the application as an abuse of the writ without considering the merits of the claims."[52]  Generally, "when a state court issues an order that summarily rejects without discussion all the claims raised by a defendant, including a federal claim that the defendant subsequently presses in a federal habeas proceeding, the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits."[53]  "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely."[54]

On its face, the TCCA's order states that is has denied the application as an abuse of the writ without considering the merits of the claims.  This would appear to be sufficient to rebut the presumption that Busby's federal claims were adjudicated on the merits, with at least one exception—his *Atkins* claim.  His *Atkins* claim in the TCCA was just one of his claims.  His lead contentions in the TCCA were arguments concerning mitigation evidence that his trial

---

[51] *Walker v. Martin*, 562 U.S. 307, 315 (2011) (quoting *Beard v. Kindler*, 558 U.S. 53, 55 (2009)).

[52] *Ex Parte Busby*, No. WR-70,747-02, 2013 WL 831550, at *1 (Tex. Crim. App. Mar. 6, 2013) (per curiam) (unpublished).

[53] *Johnson v. Williams*, 568 U.S. 289, 293 (2013) (citing *Harrington v. Richter*, 562 U.S. 86, 99 (2011)).

[54] *Harrington*, 562 U.S. at 99-100.

counsel failed to discover.  Busby submitted three broad claims to the TCCA in his second habeas application: (1) ineffective assistance of trial counsel during the sentencing phase in failing to conduct a reasonable sentencing investigation and failing to seek admittance of Latimer's hearsay statements, (2) Busby's sentence violates the Eighth Amendment because he is intellectually disabled, and (3) his sentence violates the Eighth and Fourteenth Amendments because he is severely mentally ill.  His ineffective-assistance-of-trial-counsel claim regarding mitigation evidence (unrelated to intellectual disability) subsumed large portions (the first 76 pages) of his second state habeas application.  It is highly probable that the TCCA denied relief on the ineffective-assistance-of-trial-counsel claims on the ground that they were procedurally barred since they were not raised in the initial state habeas petition.  But the same cannot be said of the *Atkins* claim.

The TCCA's seminal decision in *Ex parte Blue* makes clear that when a defendant who was convicted post-*Atkins* raises an *Atkins* claim for the first time in a successive habeas application, the Texas court must determine whether the defendant has asserted facts, which if true, would sufficiently state an *Atkins* claim to permit consideration of the successive petition.[55]  That determination is necessarily dependent on a substantive analysis of the Eighth and Fourteenth Amendments as applied to the factual allegations.

As noted, Busby first raised his *Atkins* claim in his federal habeas petition, and the district court stayed that proceeding to permit exhaustion of the claim by the state courts.  His *Atkins* claim was accordingly presented in a second state habeas petition to the TCCA.  Under section 5 of Texas's abuse-

---

[55] 230 S.W.3d 151, 162-63 (Tex. Crim. App. 2007).

No. 15-70008

of-the-writ statute, the TCCA is required to dismiss subsequent habeas petitions[56] unless sufficient specific facts are set forth:

> Sec. 5. (a) If a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:
>
> (1) the current claims and issues have not been and could not have been presented previously . . . because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;
>
> (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt; or
>
> (3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial . . . .[57]

The State contends that because intellectual disability, by definition, must exist during childhood, and because the Supreme Court's decision in *Atkins* had issued well before Busby filed his first state habeas application, Busby's second application was resolved under section 5(a)(1). The State cites this court's decision in *Rocha v. Thaler*[58] for the proposition that the TCCA's dismissal did not involve the merits of Busby's *Atkins* claim, arguing that Busby's claim was dismissed under section 5(a)(1), rather than section 5(a)(3). The State's argument is not well-taken. It badly misreads this court's decision in *Rocha* as well as the TCCA's decision in *Ex parte Blue*.[59]

---

[56] *See* TEX. CODE CRIM. PROC. ANN. art. 11.071 § 5(c) (West Supp. 2018).

[57] *Id.* § 5(a).

[58] 626 F.3d 815, 838 (5th Cir. 2010).

[59] 230 S.W.3d 151.

11

The *Rocha* opinion discussed cases that predated the TCCA's decision in *Blue*, and *Rocha* recognized that, though the TCCA addressed *Atkins* claims under section 5(a)(1) for a period of time, by the time *Rocha* was decided, the TCCA had begun resolving *Atkins* claims like Busby's under section 5(a)(3).[60] Moreover, the opinion in *Rocha* expressly recognized that, during the bygone era in which the TCCA considered *Atkins* claims under section 5(a)(1), the TCCA "step[ped] beyond a procedural determination to examine the merits of an *Atkins* claim."[61] The *Rocha* opinion said,

> This prima-facie review meant that CCA decisions dismissing *Atkins* claims for failure to satisfy § 5(a)(1) rested on the merits of those claims. Consequently, the federal courts were not procedurally barred from considering federal habeas petitions advancing *Atkins* claims that had been dismissed as abuses of the writ for failure to satisfy § 5(a)(1). We first recognized that this new, *Atkins*-specific screening function had robbed § 5(a)(1) dismissals of their independent, state-law character in our 2005 decision in *Morris v. Dretke*.[62]

The *Rocha* opinion concluded that "[t]he new prima-facie-showing requirement the [T]CCA had engrafted onto § 5(a)(1) was specific to *Atkins* claims," and that "even as we were reaching the merits of *Atkins* claims that had been dismissed under § 5(a)(1), we continued to treat other kinds of petitions that had been dismissed under § 5(a)(1) as having been dismissed on an independent and adequate state-law ground."[63] Accordingly, even had the TCCA resolved Busby's *Atkins* claim under section 5(a)(1), our court has concluded that the denial of an *Atkins* claim under section 5(a)(1) meant that

---

[60] *Rocha*, 626 F.3d at 822, 829-841.

[61] *Id.* at 832 (quoting *Rivera v. Quarterman*, 505 F.3d 349, 359-60 (5th Cir. 2007)).

[62] *Id.* at 831.

[63] *Id.* at 832-33.

the merits of the claim were considered by the TCCA, and the claim was not procedurally defaulted.

In *Blue*, the TCCA held that section 5(a)(1) does not govern when a petitioner files "his initial writ application after *Atkins* and nevertheless failed to invoke the absolute constitutional prohibition against executing the mentally retarded in that initial writ."[64]   Instead, "the decision whether to permit him to proceed will be purely a function of whether he can meet one of the other criteria of Article 11.071, Section 5."[65]   The TCCA expressly held that such *Atkins* claims are reviewed under section 5(a)(3).[66]   Unquestionably then, Busby's *Atkins* claim was resolved under section 5(a)(3).

The TCCA's decision in *Blue* also compels the conclusion that when the TCCA dismissed Busby's *Atkins* claim in his second habeas proceeding, the TCCA considered the merits of his claim.  The TCCA's decision in *Blue* explains that "through Article 11.071, Section 5(a)(3), the [Texas] Legislature has provided a mechanism whereby a subsequent habeas applicant may proceed with an *Atkins* claim," even if the petitioner's conviction was post-*Atkins*, and therefore his first state habeas petition could have raised an *Atkins* claim but did not do so.[67]   The *Atkins* claim may be pursued "if [the defendant] is able to demonstrate to [the TCCA] that there is evidence that could reasonably show, to a level of confidence by clear and convincing evidence, that no rational finder of fact would fail to find he is mentally retarded."[68]   In *Blue*, the TCCA "construe[d] . . . Section 5(a)(3) to require a *threshold* showing of evidence that would be at least *sufficient* to support an ultimate conclusion, by clear and

---

[64] *Ex parte Blue*, 230 S.W.3d 151, 156 (Tex. Crim. App. 2007).

[65] *Id.*

[66] *Id.* at 162.

[67] *Id.* at 154, 162.

[68] *Id.* at 154.

13

convincing evidence, that no rational factfinder would fail to find mental retardation."[69]

The TCCA's decision in *Blue* examined at length the evidence supporting the claim that Blue came within *Atkins*'s prohibition.[70]   The Texas court concluded that the evidence did not meet section 5(a)(3)'s threshold,[71] and the court dismissed the "subsequent writ application as an abuse of the writ."[72] This was not a denial of relief on purely state-law procedural grounds, independent of federal law, because in addressing the *Atkins* claim, the TCCA necessarily considered federal law in assessing the sufficiency of the facts supporting the claim.   When Blue subsequently sought habeas relief in the federal courts, our court noted that "the state accepts that the [T]CCA decided the merits of Blue's *Atkins* claim."[73]

The TCCA has described section 5(a)(3) as "represent[ing] the [Texas] Legislature's attempt to codify something very much like [the] doctrine of 'actual innocence of the death penalty' for purposes of subsequent state writs."[74]   The TCCA deduced that "the Legislature apparently intended to codify, more or less, the doctrine found in *Sawyer v. Whitley*."[75]   In *Sawyer*, a pre-AEDPA decision, the United States Supreme Court resolved the "standard for determining whether a petitioner bringing a successive, abusive, or defaulted federal habeas claim has shown he is 'actually innocent' of the death penalty to which he has been sentenced so that the court may reach the merits

---

[69] *Id.* at 163.

[70] *Id.* at 164-66.

[71] *Id.* at 166.

[72] *Id.* at 168.

[73] *Blue v. Thaler*, 665 F.3d 647, 654 (5th Cir. 2011).

[74] *Ex parte Blue*, 230 S.W.3d 151, 160 (Tex. Crim. App. 2007).

[75] *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333 (1992)).

of the claim" in a successive federal habeas petition.[76] The Supreme Court held that "to show 'actual innocence' one must show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law."[77] In *Blue*, the TCCA reasoned that because a person who is intellectually disabled is constitutionally ineligible for the death penalty, "no rational juror would answer any of the special issues in the State's favor, if only for the simple reason that the statutory special issues would not be submitted to the jurors in the first place."[78]

Texas Code of Criminal Procedure article 11.071, section 5(a)(3) provides a state-law actual innocence gateway through which a defendant may present an *Atkins* claim that would otherwise be procedurally defaulted under state law. The TCCA's denial of Busby's *Atkins* claim under section 5(a)(3) is best understood, therefore, as a determination that Busby did not make a threshold showing of evidence that would be sufficient to support, by clear and convincing evidence, an ultimate conclusion that no rational factfinder would fail to find him intellectually disabled.[79]    Because that determination necessarily considers the merits of a federal constitutional claim based on *Atkins*, it is not procedurally defaulted, as that concept has been expressed in federal decisions such as *Walker v. Martin*.[80]

---

[76] 505 U.S. at 335.

[77] *Id*. at 336.

[78] *Ex parte Blue*, 230 S.W.3d at 161.

[79] *Id*. at 163.

[80] 562 U.S. 307, 315-16 (2011).

## B

Our review of the state court's disposition of Busby's *Atkins* claim is governed by AEDPA.[81] The Supreme Court applied AEDPA in *Brumfield v. Cain* to an *Atkins* claim that was first raised in a state habeas proceeding and then pursued in a federal habeas petition.[82] More recently, the Supreme Court emphasized that AEDPA demands deference to state court dispositions of *Atkins* claims.[83] We reject Busby's contention that the TCCA's decision denying his *Atkins* claim is not entitled to deference under AEDPA and his assertion that we must review his *Atkins* claim de novo.[84]

Busby argues in his petition for rehearing that this court's decision in *Rocha* held that the TCCA's denial of an *Atkins* claim under section 5(a)(3) would not be subject to review under AEDPA but must be reviewed de novo. This is erroneous. The decision in *Rocha* involved a *Wiggins*[85] claim, which is an assertion that trial counsel failed to investigate adequately for mitigating evidence.[86] The *Rocha* decision expressly drew a distinction between *Atkins* and *Wiggins* claims.[87] In any event, had *Rocha* implied that we do not review

---

[81] *See, e.g.*, *Brumfield v. Cain*, 135 S. Ct. 2269, 2275 (2015).

[82] *Id.* (quoting 28 U.S.C. §§ 2254(d)(1)) ("After the Louisiana Supreme Court summarily denied his application for a supervisory writ to review the trial court's ruling, Brumfield filed a petition for habeas corpus in federal court, again pressing his *Atkins* claim. Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Brumfield could secure relief only if the state court's rejection of his claim was either 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'").

[83] *See Shoop v. Hill*, 139 S. Ct. 504, 506-07 (2019).

[84] Petition for Rehearing at iv, 10-11, 12, 15.

[85] *Wiggins v. Smith*, 539 U.S. 510 (2003).

[86] *See Rocha v. Thaler*, 626 F.3d 815, 820 (5th Cir. 2010).

[87] *Id.* at 826-27 ("There may well be some exceptions to the rule that a decision on the gateway innocence claim does not constitute a decision on the underlying constitutional claim. As Judge Dennis has previously recognized, an *Atkins* claim is a claim that the petitioner is ineligible for the death penalty. So too is a claim that the petitioner was under eighteen at the time of his crime, is insane, or has some other characteristic that the Supreme

No. 15-70008

an *Atkins* claim like Busby's under AEDPA, that would have been dicta and would be contrary to the Supreme Court's subsequent decisions in *Brumfield* and *Shoop*. The *Rocha* decision would therefore not be binding precedent on this issue.

## C

Under 28 U.S.C. § 2254(d)(1), we must ascertain the clearly established federal law, as determined by the Supreme Court of the United States, with regard to an *Atkins* claim that was first raised in state court in a second habeas petition.[88] Under *state* law, this case is in a different procedural posture than one in which a defendant first raises a claim that he is intellectually disabled at his murder trial or in his first state habeas application. At trial or in an initial habeas proceeding, a defendant in Texas state court has the burden of establishing an *Atkins* claim by a preponderance of the evidence.[89] Since Busby first raised an *Atkins* claim in state court in a subsequent habeas petition, Texas Code of Criminal Procedure article 11.071, section 5(a)(3) requires that Busby must prove by "clear and convincing evidence, that no rational factfinder would fail to find mental retardation."[90] In ruling upon

---

Court has held categorically justifies exemption from the death penalty. In such cases, the inquiry into the gateway innocence claim will substantially overlap with the inquiry into the merits of the underlying constitutional claim. Our panel opinion's holding does not implicate this limited class of cases, as Rocha's *Wiggins* claim is not a claim of categorical ineligibility for the death penalty.").

[88] 28 U.S.C. § 2254(d)(1).

[89] *See Gallo v. State*, 239 S.W.3d 757, 770 (Tex. Crim. App. 2007) ("[I]n a habeas action, a defendant has the burden to prove mental retardation by a preponderance of the evidence. Similarly, we now hold that when the issue is presented at trial, a defendant bears the burden of proof, by a preponderance of the evidence, to establish that he is mentally retarded.").

[90] *Ex parte Blue*, 230 S.W.3d 151, 163 (Tex. Crim. App. 2007); *see also id.* at 154 ("We conclude that through Article 11.071, Section 5(a)(3), the Legislature has provided a mechanism whereby a subsequent habeas applicant may proceed with an *Atkins* claim if he is able to demonstrate to this Court that there is evidence that could reasonably show, to a level of confidence by clear and convincing evidence, that no rational finder of fact would fail

17

Busby's *Atkins* claim, the TCCA necessarily held that Busby failed to present "evidence that could reasonably show, to a level of confidence by clear and convincing evidence, that no rational finder of fact would fail to find he is mentally retarded."[91]  The TCCA foreclosed Busby from establishing his claim under the less-demanding preponderance-of-the-evidence standard. Accordingly, an initial question is whether the TCCA unreasonably applied clearly established federal law in doing so.

Supreme Court decisions construing AEDPA indicate that the federal constitution permits *federal* courts to deny, as an abuse of the writ, a claim that a defendant is innocent of the death penalty, if the actual-innocence claim is brought in a successive application under 28 U.S.C. § 2244, and the factual predicate for the claim could have been discovered previously through the exercise of due diligence.[92]  There is no basis for concluding that the federal constitution prohibits the States from similarly denying, as an abuse of the writ, claims of actual innocence of the death penalty first asserted in a second, successive or, to use the language of the Texas statute, "subsequent" state habeas petition.

As discussed above, the Supreme Court's pre-AEDPA decision in *Sawyer v. Whitley* established that federal courts could employ the miscarriage of justice exception even if claims were first raised in successive federal habeas petitions.[93]  However, in *McQuiggin v. Perkins*, the Supreme Court explained that in enacting AEDPA, Congress "constrained the application of the

---

to find he is mentally retarded.  However, because we find that the applicant in this case has failed to satisfy this heightened-threshold burden, we deny him leave to proceed.").

[91] *Id.* at 154.

[92] *See* 28 U.S.C. § 2244(b)(2)(B); *see also McQuiggin v. Perkins*, 569 U.S. 383, 395-96 (2013).

[93] *See* 505 U.S. 333, 335-36, 339 (1992).

No. 15-70008

[miscarriage-of-justice] exception" by the inclusion of § 2244(b)(2)(B).[94]  That section of AEDPA "limits the exception to cases in which 'the factual predicate for the claim could not have been discovered previously through the exercise of due diligence,' and the petitioner can establish that no reasonable factfinder 'would have found [her] guilty of the underlying offense' by 'clear and convincing evidence.'"[95]  The Supreme Court reasoned that "Congress thus required second-or-successive habeas petitioners attempting to benefit from the miscarriage of justice exception to meet a higher level of proof ('clear and convincing evidence') and to satisfy a diligence requirement that did not exist prior to AEDPA's passage."[96]

Texas law is less demanding than federal law in this regard.  A defendant asserting an *Atkins* claim post-*Atkins* is not required to satisfy a diligence requirement but only to establish "by clear and convincing evidence" that "no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury."[97]  The application of this Texas-law standard to *Atkins* claims by persons convicted post-*Atkins* is not "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States."[98]

The Supreme Court's holdings regarding *Ford*[99] incompetence-to-be-executed claims cannot be imported, wholesale, into the law governing *Atkins* claims.  First and foremost, a *Ford* incompetency-to-be-executed claim is not necessarily "successive" even if raised in a second or subsequent habeas

---

[94] 569 U.S. at 395.

[95] *Id.* at 396.

[96] *Id.*

[97] TEX. CODE CRIM. PROC. ANN. art. 11.071 § 5(a)(3) (West Supp. 2018).

[98] 28 U.S.C. § 2254(d)(1).

[99] *Ford v. Wainwright*, 477 U.S. 399 (1986).

application.[100]  A *Ford* claim can be raised in multiple proceedings and not be "successive."[101]  That is because mental incompetence to be executed is not categorically a permanent condition.[102]  Incompetence may occur at various points after conviction, and it may recede and later reoccur.  A finding that an inmate is incompetent to be executed does not foreclose the possibility that she may become competent in the future and would no longer be constitutionally ineligible for the death penalty.[103]  By contrast, intellectual disability is by definition a permanent condition that must have manifested before the age of

---

[100] *See Panetti v. Quarterman*, 551 U.S. 930, 947 (2007) (noting that in *Ford* the Court "remand[ed] the case to the District Court to resolve Ford's incompetency claim, even though Ford had brought that claim in a second federal habeas petition"); *id.* ("The statutory bar on 'second or successive' applications does not apply to a *Ford* claim brought in an application filed when the claim is first ripe.  Petitioner's habeas application was properly filed, and the District Court had jurisdiction to adjudicate his claim."); *id.* (citing *Barnard v. Collins*, 13 F.3d 871, 878 (5th Cir. 1994) for our court's observation that "our research indicates no reported decision in which a federal circuit court or the Supreme Court has denied relief of a petitioner's competency-to-be-executed claim on grounds of abuse of the writ").

[101] *See id.; see also Green v. Thaler*, 699 F.3d 404, 421 (5th Cir. 2012) (OWEN, J., concurring) ("[A] defendant subject to a sentence of death could initiate more than one competency proceeding in a state court over time, and habeas petitions separately challenging each state-court competency proceeding would not necessarily be considered successive under AEDPA.  Each proceeding might depend on the facts that obtained at the time of the competency hearing, particularly when relatively long periods of time had passed between adjudications of competency.").

[102] *See Ford*, 477 U.S. at 429 (O'CONNOR, J., concurring in the result in part and dissenting in part) ("Regardless of the number of prior adjudications of the issue, until the very moment of execution the prisoner can claim that he has become insane sometime after the previous determination to the contrary."); *id.* at 435 (REHNQUIST, J., dissenting) ("A claim of insanity may be made at any time before sentence and, once rejected, may be raised again; a prisoner found sane two days before execution might claim to have lost his sanity the next day, thus necessitating another judicial determination of his sanity and presumably another stay of his execution" (citing *Nobles v. Georgia*, 168 U.S. 398, 405-06 (1897))); *Nobles*, 168 U.S. at 405 (observing that "a finding that insanity did not exist at one time would not be the thing adjudged as to its nonexistence at another").

[103] *See Green*, 699 F.3d at 421 (OWEN, J., concurring) (reasoning that "a determination that a defendant was incompetent to be executed would not vacate the sentence of death.  The sentence would remain, but, as a constitutional matter, it could not be enforced unless and until the defendant became competent to be executed").

## No. 15-70008

18.    A person who is found to be intellectually disabled is permanently ineligible to be executed, and the sentence of death is vacated.

Busby's *Atkins* claim was presented in a successive state application.[104] A defendant convicted by a federal court who presents an *Atkins* claim in a successive federal application would not be entitled under federal law to de novo review of that claim in federal court, or to review under a preponderance-of-the-evidence standard.[105]   Busby does not contend that the gateway clear-and-convincing-evidence standard in Texas Code of Criminal Procedure article 11.071, section 5(a)(3) is unconstitutional.   The clear-and-convincing-evidence component of that standard is congruent with federal law, as set forth in 28 U.S.C. § 2244(b)(2)(B)(ii) and in *McQuiggin v. Perkins*,[106] when an actual innocence-of-the-death-penalty claim is first asserted in a successive habeas application.    Accordingly, Texas's application of the clear-and-convincing standard was not an unreasonable application of clearly established federal law.

In his petition for rehearing, Busby asserts that the standard of review was not briefed, suggesting that our court should not or could not consider the proper standard of review absent briefing.   Busby cannot avoid application of the correct standard of review by failing to mention or brief it.   By the same token, even if an opposing party, in this case a state, does not address the proper standard of review in its briefing, or failed to file a brief at all, it is incumbent on courts to apply AEDPA.[107]   We cannot grant habeas relief unless

---

[104] *Ex parte Busby*, No. WR-70,747-02, 2013 WL 831550, at *1 (Tex. Crim. App. Mar. 6, 2013) (per curiam) (unpublished).

[105] *See* 28 U.S.C. § 2244(b)(2)(B)(ii).

[106] 569 U.S. 383, 396 (2013).

[107] *See, e.g.*, *Winfield v. Dorethy*, 871 F.3d 555, 560-63 (7th Cir. 2017) (citing *Worth v. Tyer*, 276 F.3d 249, 262 n.4 (7th Cir. 2001)) (explaining "the general principle that waiver does not apply to arguments regarding the applicable standard of review"); *Gardner v.*

No. 15-70008

AEDPA's requirements have been met.[108]  We are obliged to discern how AEDPA applies when an *Atkins* claim is first presented to a state court in a successive state habeas proceeding.

In his petition for rehearing, Busby also argues that we misconstrued his federal application as successive in our initial (now-withdrawn) opinion.[109] Busby misreads that opinion.  It is clear that all references to Busby's "successive petition" were to his second Texas state court habeas application, which is subsequent or successive under state law.  We did not refer to or treat his federal habeas petition as "successive."

## D

Only Supreme Court holdings qualify as clearly established federal law under AEDPA.[110]  "'[C]learly established Federal law' . . . is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."[111]  The TCCA issued its decision denying relief on Busby's *Atkins* claim on March 6, 2013.[112]  The Supreme Court has recently indicated that two of its decisions, *Moore v. Texas*,[113] decided in 2017, and *Hall*

---

*Galetka*, 568 F.3d 862, 879 (10th Cir. 2009) ("[T]he correct standard of review under AEDPA is not waivable.  It is, unlike exhaustion, an unavoidable legal question we must ask, and answer, in every case."); *Worth*, 276 F.3d at 262 n.4. (explaining in the context of a Title VII challenge that "the court, not the parties, must determine the standard of review, and therefore, it cannot be waived").

[108] 28 U.S.C. § 2254(b).

[109] *See Busby v. Davis*, 892 F.3d 735, 746-47 (5th Cir. 2018).

[110] *See Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004).

[111] *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003); *see also Greene v. Fisher*, 565 U.S. 34, 38 (2011) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011)) (stating that federal courts "measure state-court decisions 'against [Supreme Court] precedents *as of "the time the state court renders its decision.""*").

[112] *Ex parte Busby*, No. WR-70,747-02, 2013 WL 831550, at *1 (Tex. Crim. App. Mar. 6, 2013) (per curiam) (unpublished).

[113] 137 S. Ct. 1039 (2017).

*v. Florida*,[114] decided in 2014, did not become clearly established federal law regarding certain aspects of an *Atkins* claim until the respective dates of their issuance.[115]  To the extent that *Moore* and *Hall* expanded *Atkins*, they were not clearly established federal law when the TCCA denied relief on Busby's *Atkins* claims.

The TCCA's decision was a succinct denial of relief.[116]  It did not identify the law that it applied. The Supreme Court has held that "[s]ection 2254(d) applies even where there has been a summary denial" of habeas relief.[117] Busby "can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the [TCCA's] decision."[118] Because application of the currently prevailing law regarding intellectual disability to the facts of this case would not require the grant of habeas relief, we will not parse the precise contours of clearly established federal law as of March 6, 2013.  For the same reason, the argument in Busby's petition for rehearing that *Moore* invalidated the *Briseño* factors, and that the TCCA must have applied those factors, is unavailing.

For purposes of our review, we use the definition that the Supreme Court said in *Moore* is the "generally accepted, uncontroversial intellectual-disability diagnostic definition" that the Texas state trial court in *Moore* had applied:

> (1) intellectual-functioning deficits (indicated by an IQ score "approximately two standard deviations below the mean"—*i.e.*, a score of roughly 70—adjusted for "the standard error of measurement," AAIDD–11, at 27); (2) adaptive deficits ("the inability to learn basic skills and adjust behavior to changing

---

[114] 572 U.S. 701 (2014).

[115] *Shoop v. Hill*, 139 S. Ct. 504, 507-508 (2019).

[116] *Ex parte Busby*, 2013 WL 831550, at *1.

[117] *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011) (citing *Harrington v. Richter*, 562 U.S. 86, 101-02 (2011)).

[118] *Id.* at 188.

circumstances," *Hall v. Florida*, 572 U.S. ___, ___, 134 S.Ct. 1986, 1994, 188 L.Ed.2d 1007 (2014)); and (3) the onset of these deficits while still a minor. See App. to Pet. for Cert. 150a (citing AAIDD–11, at 1). See also *Hall*, 572 U.S., at ___, 134 S.Ct., at 1993–1994.[119]

We will also hew to the Supreme Court's decisions regarding *Atkins* claims that post-date the TCCA's 2013 denial of Busby's *Atkins* claim.[120]

**E**

A federal court cannot grant habeas relief under 28 U.S.C. § 2254(d)(2) "unless the adjudication of the claim . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[121]  In denying Busby's *Atkins* claim, the TCCA necessarily held that he failed to present "evidence that, if true, would be sufficient to show by clear and convincing evidence that no rational factfinder would fail to find him mentally retarded."[122]  The standard of review that the TCCA applied is not contrary to federal law, for the reasons discussed above.  Accordingly, we assess whether the TCCA unreasonably determined that the facts set forth in Busby's petition, if true, would not establish by clear and convincing evidence that no rational factfinder would fail to find Busby intellectually disabled.  Alternatively, we also assess whether, applying a preponderance-of-the-evidence burden of proof, the TCCA's decision was based on an unreasonable determination of the facts.  We conclude that applying either burden of proof, § 2254(d)(2)'s requirement has not been met, and habeas relief is not warranted.

---

[119] *Moore v. Texas,* 137 S. Ct. 1039, 1045 (2017).

[120] *See*, *e.g.*, *id.*; *Brumfield v. Cain*, 135 S. Ct. 2269 (2015); *Hall v. Florida*, 134 S. Ct. 1986 (2014).

[121] 28 U.S.C. § 2254(d)(2).

[122] *Ex parte Blue*, 230 S.W.3d 151, 163 (Tex. Crim. App. 2007).

No. 15-70008

We begin with Busby's IQ scores. Busby was administered five separate IQ tests between 2001 and 2010.[123] He scored 96 on an unknown IQ test in 2001,[124] and the State offered to "forget about" that test, acknowledging that it was unreliable.[125] Because it does not impact our analysis, we do not consider that test. Prior to his criminal trial, three more IQ tests were administered to Busby. He received a full scale IQ of 77 on the WAIS-III, administered in 2005 by his expert witness at trial, Dr. Proctor.[126] The standard error of measurement (SEM)[127] for the WAIS-III is approximately "plus or minus five," according to Dr. Proctor's trial testimony.[128] Busby's IQ was therefore in a range of 72-82, as measured by the WAIS-III. Busby asserted in his second state habeas petition that due to the "Flynn Effect," the score of 77 should be adjusted to 73.7. Weeks after Dr. Proctor's assessment, the State's psychologist re-administered the WAIS-III, and Busby scored 79.[129] The IQ range would be 74-84, based on that test and its SEM.

Dr. Proctor administered a third IQ test on the eve of trial—the Beta-III—on which Busby scored 81.[130] Proctor testified that this score "correlates fairly well" with Busby's WAIS-III score.[131] The SEM for the Beta-III is not in the record. Busby argued to the TCCA that "[a] mental retardation expert would opine, however, that the Beta IQ test, because of its less comprehensive nature, is widely acknowledged to inflate IQ scores generally,

---

[123] *Busby v. Stephens*, No. 4:09-CV-160-O, 2015 WL 1037460, at *20 (N.D. Tex. Mar. 10, 2015).

[124] *Id.*

[125] *Id.*; 36 RR 64.

[126] *Busby*, 2015 WL 1037460, at *20; 36 RR 40, 53.

[127] *See generally Hall v. Florida*, 134 S. Ct. 1986, 1995 (2014).

[128] 36 RR 57.

[129] *Busby*, 2015 WL 1037460, at *20.

[130] *Id.*

[131] 36 RR 48.

to be subject to a higher Flynn Effect rate than the Wechsler scales, and to be less reliable overall than the Wechsler Scales."[132]  However, no expert did so opine in the state-court proceedings, and there was no evidence provided to the TCCA as to what the IQ range would be if the SEM were considered or if the Flynn Effect were accepted and applied.  All that the TCCA had before it regarding the Beta-III test was the fact that Busby had scored 81 and the arguments of counsel attempting to discredit or explain that score.  Even assuming that the SEM for the Beta-III test is similar to that for the WAIS-III, the IQ range would be 76-86.  Such a range would be above the range of 75 or below that the Supreme Court has applied in its recent opinions regarding IQ scores in the context of an *Atkins* claim.[133]  The Supreme Court said in *Brumfield* that evidence of an IQ score whose range, adjusted by the SEM, was above 75 "could render the state court's determination reasonable."[134]

Busby provided arguments in his federal habeas petition regarding the Beta-III test and his score of 81 that were not presented to the TCCA.  He asserted in federal court that the Beta-III had been "normed" seven years before it was administered to Busby, and that if adjusted for the Flynn Effect, the score would be 78.7.[135]  He did not point to any expert testimony or other evidence in the record that supports these arguments.  Nor is there evidence as to the SEM of this test or the range of the score when the SEM is considered.  Again, there was only argument of counsel.  Busby was provided the

---

[132] ROA.3525.

[133] *See Hall v. Florida*, 134 S. Ct. 1986, 1996 (2014) ("For professionals to diagnose—and for the law then to determine—whether an intellectual disability exists once the SEM applies and the individual's IQ score is 75 or below the inquiry would consider factors indicating whether the person had deficits in adaptive functioning.  These include evidence of past performance, environment, and upbringing.").

[134] *Brumfield v. Cain*, 135 S. Ct. 2269, 2278 (2015).

[135] ROA.2478.

opportunity to present whatever expert testimony he deemed necessary in the federal district court proceedings, and he did not present any additional evidence regarding this test. The only evidence that the TCCA and federal district court had was that Busby's full score IQ as measured by the Beta-III test was 81.

In 2010, immediately prior to filing his federal habeas petition, Busby was administered the WAIS-IV and scored a 74.[136] The report of the clinician who administered this test reflects that, adjusted based on a 95% confidence interval for the WAIS-IV, Busby's full scale IQ range is 70-79, which the report characterizes as "Borderline."[137]

Before the trial at which Busby was convicted, Proctor also administered the Wide Range Achievement Test, Third Edition, which measured Busby's educational abilities in reading, spelling and math.[138] Busby tested at the fourth-grade level in reading, third-grade level in spelling, and sixth-grade level in math.[139]

Busby argues that because the federal district court's analysis of the merits of the *Atkins* claim was based only on IQ scores, it follows that the district court also concluded that "the [T]CCA's analysis must have stopped at that point as well." First, it appears that the federal district court did consider Busby's achievement test scores, which were not IQ test scores. But in any event, we cannot assume that the TCCA considered only Busby's IQ scores and ignored other evidence in Busby's state habeas application. Nor can we assume that the TCCA ignored the *lack* of evidence in Busby's state habeas application. Not a single clinician opined that Busby is intellectually disabled, though there

---

[136] ROA.4092-96.

[137] ROA.4092.

[138] *Busby v. Stephens*, No. 4:09-CV-160-O, 2015 WL 1037460, at *10 (N.D. Tex. Mar. 10, 2015).

[139] *Id.*

were three reports from mental health experts appended to Busby's second state habeas application. Based on the record presented to the TCCA, no clinician examined Busby's IQ scores, evidence of whether Busby has "adaptive deficits ('the inability to learn basic skills and adjust behavior to changing circumstances')", or whether there was an onset of adaptive deficits while Busby was a minor, and then reached the conclusion that Busby is intellectually disabled.

Busby retained Gilda Kessner, a Doctor of Psychology, and she submitted a report dated March 21, 2008.[140] Though Busby did not claim in his first state habeas petition that he was intellectually disabled, he filed this report as part of the evidence in his first state habeas proceeding. The same report was an exhibit to his second state habeas application. Kessner's report reflects that she reviewed an array of Busby's records and the testimony of Dr. Proctor, who was an expert witness for Busby in his murder trial. Kessner's report concludes that the WAIS-III that Proctor administered to Busby was the current test at the time.[141] Her report reflects that Proctor testified at trial that Busby scored 77 on that test, and that Proctor testified that Busby was not mentally retarded because "the DSM-IV diagnosis of mental retardation would be a score below 70."[142] However, Kessner opined that Proctor had not accounted for a phenomenon known as the Flynn Effect, which posits that there is a rise or gain in IQ scores over time and that "[r]esearch literature has suggested that this figure is .3 per year beginning the year after the test is normed."[143] Importantly, Kessner concluded that the 77 score on the WAIS-III "does not rule out a diagnosis of mental retardation," and that "a thorough

---

[140] ROA.4103-08.
[141] ROA.4106.
[142] ROA.4106.
[143] ROA.4106.

investigation into Mr. Busby's adaptive behavior history is necessary to make a proper determination."[144]  The report continued, "[a]t this time, I do not believe that has been accomplished."[145]  Her report said, "I am concerned that that the apparent perfunctory reliance on the obtained score truncated the investigation into the possibility of the presence of mental retardation in Mr. Busby."[146]  Kessner's report had explained that "the next version of the Wechsler series (WAIS-IV) will be available to clinicians in the fall of 2008."[147]  Her report concluded with this recommendation: "I would recommend a new evaluation with the WAIS-IV when it is available this fall so that the issue of the Flynn Effect and questions about the validity of the score can be avoided."[148]  Kessner's report addresses only one of the three broad criteria for diagnosing intellectual disability.  As to that criteria, the most she said was that the WAIS-III score of 77 did not "rule out" intellectual disability.

After Busby filed his federal habeas petition, he retained two other experts regarding his mental capacities, and their reports were also appended to Busby's second state habeas petition.  The report of Gilbert Martinez reflects that he is a Ph.D., licensed psychologist, and clinical neuropsychologist, and that Busby "underwent standardized assessment of his intellectual functioning on February 11, 2010."[149]  The report is relatively brief and offers no opinion as to whether Busby is intellectually disabled.  It reflects in a chart that Martinez administered the WAIS-IV, that Busby's full scale IQ score was 74, and that within a 95% confidence interval, his IQ score was 70-79.[150]  Under

---

[144] ROA.4107.
[145] ROA.4107.
[146] ROA.4107.
[147] ROA.4106.
[148] ROA.4107.
[149] ROA.4091.
[150] ROA.4092.

a column in this chart labelled "Qualitative Description," the word "Borderline" appears with regard to Busby's full scale IQ score.[151]  The report also reflects that Martinez administered a Test of Memory Malingering, and "[t]here was no evidence of misrepresentation of cognitive or intellectual functioning."[152]

Federal habeas counsel also retained Bekh Bradley-Davino, Ph.D., who is a licensed clinical psychologist.[153]  Bradley-Davino spent ten hours evaluating Busby in person and reviewed a substantial amount of written material and records.[154]  Bradley-Davino prepared a 20-page report, most of which does not pertain to whether Busby is intellectually disabled.  But in a section titled "Limited Intellectual Abilities and Academic Problems Became Apparent in Mr. Busby's Childhood and Continued into Adulthood," the report states that "[a] number of sources of data including school records, behavioral descriptions provided by Mr. Busby as well as his family, teachers, and peers, and results of standardized tests, indicate that at a young age Mr. Busby demonstrated significant signs of impaired/limited academic and intellectual/mental abilities."[155]  The report also recounts the results of the WAIS-IV IQ test administered by Martinez and its full scale IQ score of 74, and concludes that "[t]his score reflects significant limitations in intellectual functioning, approximately two standard deviations below the mean."[156]  The report reflects that Busby was placed in special education by at least the seventh grade, that he had "significant problems in academic functioning beginning early," and that he could not understand some of the more complex

---

[151] ROA.4092.
[152] ROA.4091.
[153] ROA.1283.
[154] ROA.1283-84.
[155] ROA.1289.
[156] ROA.1289.

plays during high school football practice.[157]  But there is no conclusion drawn from all of the facts in Bradley-Davino's report that Busby is intellectually disabled.  Instead, the report closes with this recommendation: "I additionally strongly recommend further evaluation of Mr. Busby by an expert in mental retardation in light of his clear history of extensive intellectual and adaptive functioning limitations."[158]  From this, a reasonable person could certainly conclude that Busby should be further evaluated.  But this is not a conclusion that Busby is intellectually disabled.  To the contrary, it underscores this expert's opinion that further evaluation would be necessary to determine whether Busby is intellectually disabled.  A reasonable juror or factfinder could fail to conclude from this evidence, even "in light of [Busby's] clear history of extensive intellectual and adaptive functioning limitations," that Busby was intellectually disabled.

If Busby was in fact evaluated by an expert in intellectual disability, as Kessner and Bradley-Davino recommended, Busby has not disclosed the results of such an evaluation.  The district court noted that the entire report prepared by Martinez was not included as part of Busby's evidence.  We do not know, therefore, what conclusions, if any, Martinez may have drawn in that report as to whether Busby is intellectually disabled.

We cannot say that the TCCA's denial of the *Atkins* claim in Busby's successive habeas application "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"[159] or an unreasonable application of clearly established federal law to those facts.

---

[157] ROA.1289-90.

[158] ROA.1302.

[159] 28 U.S.C. § 2254(d)(2).

No. 15-70008

## F

In our initial opinion in this case (now withdrawn), we construed Busby's invocation of the federal actual-innocence doctrine as the assertion of an independent ground for relief.[160]  In his petition for rehearing, Busby insists that he raised this claim in the alternative, as an exception to procedural default should we have found his *Atkins* claim procedurally defaulted.  We accordingly express no opinion as to the viability of a federal actual-innocence claim as an independent ground for relief.

## III

Busby asserts that he received ineffective assistance of counsel in his direct appeal.  During the guilt phase of Busby's trial, the state trial court refused to admit a written statement from a technician who had administered a lie detector test to Kathleen "Kitty" Latimer, who was Busby's accomplice in the kidnapping and murder of Laura Crane.  The technician had told Latimer that her responses regarding the details of the crime indicated evasion, and the technician's written statement reflects that Latimer then stated that she had not been truthful and that she told Busby to tie up Crane or to tape her down to keep her from making noise while in the trunk.  Busby's direct appeal counsel, who also served as his trial counsel, did not raise the exclusion of this testimony as an issue in the direct appeal.  Busby was appointed different counsel to pursue his initial state habeas application, and that attorney did not assert a claim that direct appeal counsel was ineffective in failing to raise the exclusion of Latimer's statements as an issue on direct appeal.  Busby concedes that the claim is procedurally defaulted since it was not raised in his initial state habeas application.

---

[160] *Busby v. Davis*, 892 F.3d 735, 754-55 (5th Cir. 2018).

No. 15-70008

Busby contends that he has established cause for the default by demonstrating that his state habeas counsel was deficient in failing to raise the claim, relying upon the Supreme Court's decisions in *Martinez v. Ryan*[161] and *Trevino v. Thaler*.[162]  However, in *Davila v. Davis*,[163] which issued while this case was pending in our court, the Supreme Court held that ineffective assistance of state habeas counsel is not sufficient cause to excuse the procedural default of a claim for ineffective assistance of direct appeal counsel.[164]  "Because a prisoner does not have a constitutional right to counsel in state postconviction proceedings, ineffective assistance in those proceedings does not qualify as cause to excuse a procedural default."[165]

Busby contends that his claim of ineffective assistance of appellate counsel will never be considered unless an exception is made.  The *Davila* decision expressly rejected the same argument,[166] reasoning that "the Court in *Martinez* was principally concerned about *trial errors*—in particular, claims of ineffective assistance of *trial* counsel."[167]  The Court explained that "[t]he criminal trial enjoys pride of place in our criminal justice system in a way that an appeal from that trial does not,"[168] and the Court "declin[ed] to expand the *Martinez* exception to the distinct context of ineffective assistance of appellate counsel."[169]

---

[161] 566 U.S. 1 (2012).

[162] 569 U.S. 413 (2013).

[163] 137 S. Ct. 2058 (2017).

[164] *Id*. at 2065.

[165] *Id*. at 2062.

[166] *Id*. at 2066 (citing *Coleman v. Thompson*, 501 U.S. 722 (1991)) ("Petitioner's primary argument is that his claim of ineffective assistance of appellate counsel might never be reviewed by any court, state or federal, without expanding the exception to the rule in *Coleman*.").

[167] *Id*.

[168] *Id*.

[169] *Id*. at 2067.

We note that while Busby asserted in his second state habeas petition that trial counsel was ineffective for failing to offer additional grounds as to why the hearsay statements were admissible, Busby has abandoned that claim in this court. He has not included it in the issues he has raised, and he has not argued or briefed such a claim. He now argues that "[t]rial counsel preserved error for direct appeal" and that trial counsel's "argument that Latimer's statements were admissible hearsay is undoubtedly a 'solid, meritorious argument' that was supported by 'controlling precedent' and should have been raised."

We further note that although Busby was represented by Strickland both at trial and on direct appeal, Busby does not contend that there was a conflict of interest because of this representation or that Strickland's failure to contend on appeal that it was error to exclude Latimer's statements was related to any conflict of interest arising out of the fact that Strickland also represented Busby at trial. Strickland would not have been in a position of arguing on direct appeal that he was ineffective in the trial court because he failed to assert additional grounds for admitting the hearsay evidence, since Busby now asserts that the trial court erred when it excluded the evidence in spite of Strickland's "solid, meritorious" arguments in the trial court.

There is an additional reason that relief should be denied on this claim. There appears to have been an adequate, independent state-law procedural rule that supported the TCCA's denial of this claim. Busby's second habeas application in the TCCA did not adequately brief or argue the ineffective-assistance-of-direct-appeal-counsel claim. That claim is mentioned only in footnotes 27 and 28 of that application. Footnote 27 says "[d]irect appeal

No. 15-70008

counsel's failure to raise the denial of admittance of [Latimer's statements] under Texas evidentiary law is a separate claim for relief."[170] Footnote 28 says:

> Latimer's statement was also admissible under Texas law as a statement against interest. Counsel did seek admission on that basis, but the trial court erroneously sustained the State's objection. Although trial counsel preserved the error that the admission was not a statement against interest, counsel inexplicably did not raise the error as a ground of appeal. Counsel's failure to raise this error on direct appeal is the basis of a claim that Mr. Busby was deprived of the effective assistance of counsel on appeal.[171]

This issue was not otherwise designated as a claim for relief or otherwise briefed or supported by any argument. Under Texas law, it was forfeited.[172]

Even were we not barred from reaching the merits of the defaulted or procedurally barred claim, it would fail because Busby cannot establish the prejudice prong of review for ineffective-assistance-of-counsel claims. The *Strickland* analysis requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[173] Busby must show that "but for his counsel's" failure to raise the issue on appeal, "he would have prevailed on his appeal."[174] The polygraph technician's written statement said:

> Following the examination, Ms. Latimer was advised of the deceptive nature of her responses to the above noted relevant questions. She was asked for an explanation at which time she maintained that she did lie to me about encouraging or instructing Mr. Busby to tape up Ms. Crane. She stated that at one of the first stops where they got gas she could continue to hear Ms. Crane

---

[170] ROA.3496.

[171] ROA.3497.

[172] *See Ex parte Garcia*, No. WR-40,214-02, 2008 WL 4573962, at *1 (Tex. Crim. App. 2008) (per curiam) (unpublished) (citing *Alvarado v. State*, 912 S.W.2d 199, 210 (Tex. Crim. App. 1995)); *Ex parte Schoolcraft*, 107 S.W.3d 674, 677 (Tex. App.—San Antonio 2003).

[173] *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

[174] *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

banging in the trunk and she stated she realized the music was not going to stop the noise from being heard.  She stated she told [Busby] "You are going to have to tie her up or tape her down because she is making too much noise."  She stated at the next truck stop where they stopped, she told him again "we need to do something."  She stated she told him "I said you need to tie her up or do something because she is making too much noise."  During the final portion of the post-test interview, she continued to deny that she actually saw Ms. Crane taped up in the trunk and denied Mr. Busby's allegations that she helped or participated in tying up Ms. Crane in any way.[175]

The federal district court recognized "it is not a defense to murder that someone told the defendant to do it," and that "Latimer's statement is not inconsistent with Busby's guilt; it inculpates both of them."[176]  More importantly, as the federal district court explained, "[t]here is no question that Busby was the individual who taped the victim and ultimately caused her death.  His fingerprint was lifted from the duct tape."[177]  "Busby admits he taped the victim while he was alone with her at Walmart and Latimer was at the LaQuinta hotel."[178]

Had Busby's appellate counsel pursued on appeal the claim that the trial court erred in excluding Latimer's statements, the TCCA would have applied Texas Rule of Appellate Procedure 44.2(b), and it would have examined the record as a whole.[179]  If the court was fairly assured that the error did not influence the jury or had but a slight effect, it would conclude that the error

---

[175] *Busby v. Stephens*, No. 4:09-CV-160-O, 2015 WL 1037460, at *11 (N.D. Tex. Mar. 10, 2015).

[176] *Id.* at *13.

[177] *Id.* at *14 n.10.

[178] *Id.*

[179] *See Ray v. State*, 178 S.W.3d 833, 836 (Tex. Crim. App. 2005) (citing *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000)).

was harmless.[180] There is no reasonable probability that the TCCA would have reversed and granted Busby a new trial because it is highly likely that the TCCA would have concluded that any error in excluding Latimer's statements was harmless. Latimer's statements would have had only a slight effect, if any, on the jury's finding of guilt and the jury's findings at the penalty phase. The evidence is clear that Busby wrapped 23 feet of tape around his victim's head and used such force that her nose was dislocated. He did this when alone, while Latimer was at a motel.

## IV

Busby contends that his trial counsel, Strickland, was ineffective in failing "to uncover a wealth of readily available mitigating evidence that was necessary to both developing an accurate mental health diagnosis and presenting a persuasive mitigation case to the jury." The district court pretermitted the question of whether trial counsel was ineffective and proceeded directly to an analysis of whether, assuming trial counsel was ineffective, Busby was prejudiced.[181] The district court carefully considered all of the evidence presented at trial, both mitigating and aggravating evidence. It then considered evidence that Busby says should have been presented, and concluded that Busby had failed to satisfy the prejudice prong of the ineffective-assistance-of trial-counsel claim.[182]

To establish ineffective assistance of trial counsel under *Strickland*, a petitioner must show that "counsel's representation fell below an objective

---

[180] *Id*. ("When evaluating harm from non-constitutional error flowing from the exclusion of relevant evidence, we examine the record as a whole, and if we are fairly assured that the error did not influence the jury or had but a slight effect, we conclude that the error was harmless.").

[181] *Busby*, 2015 WL 1037460, at *12.

[182] *Id*. at *16.

standard of reasonableness"[183] and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[184]  When a *Strickland* claim is based on an allegedly deficient sentencing investigation, the petitioner may establish prejudice by showing that "the totality of the available mitigation evidence . . . reweigh[ed] . . . against the evidence in aggravation"[185] creates "a reasonable probability that at least one juror would have struck a different balance" and recommended a life sentence instead of death.[186]  We agree with the district court that this latter standard has not been met.

With regard to the available mitigation evidence and the evidence in aggravation, we will not set forth that evidence in minute detail, because the district court has done so thoroughly and accurately.[187]  We agree with the conclusions that the district court reached regarding the weight of the aggravating evidence as measured against the "new" mitigating evidence.[188]

We will only briefly, and generally, recount the evidence.  At Busby's trial, custodians of his school records testified that he had a mixed academic record,[189] was required to repeat two grades,[190] was frequently absent from school, and ultimately dropped out of school.[191]  They also noted that he was enrolled in special education classes for students with IQ's lower than average,

---

[183] *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

[184] *Id.* at 694.

[185] *Sears v. Upton*, 561 U.S. 945, 955-56 (2010) (per curiam) (quoting *Porter v. McCollum*, 558 U.S. 30, 41 (2009)).

[186] *Wiggins v. Smith*, 539 U.S. 510, 537 (2003).

[187] *See Busby v. Stephens*, No. 4:09-CV-160-O, 2015 WL 1037460, at *4-12 (N.D. Tex. Mar. 10, 2015).

[188] *Id.* at *13.

[189] 35 RR 17-24.

[190] 35 RR 16, 24.

[191] 35 RR 16.

but above 70.[192]  His special education teacher spoke to Busby's lack of support at home, his life as a "follower" in a segregated neighborhood,[193] and her observation that he was a difficult student.[194]  The fact that Busby attempted to commit suicide on four occasions and was hospitalized on each occasion was presented to the jury.[195]  Busby's expert witness advised the jury that he had found "documented evidence of long-standing chronic alcohol abuse" and "longstanding and chronic" abuse of "essentially illegal drugs," meaning "[s]treet drugs."[196]

The state introduced aggravation evidence at trial showing that Busby had an extensive criminal history and a violent nature.[197]  Busby previously pled guilty to a robbery in which he attacked the victim with a box cutter, causing the victim to be covered in blood from his waste up, then stole the victim's truck and other personal property[198] Busby pleaded guilty to stealing donations from the Salvation Army.[199]  During his time in prison for these offenses, Busby was a violent and aggressive inmate.[200]  A Kmart employee testified that Busby once attempted to steal batteries and when he was confronted, he threatened the employee and his family.[201]  The State also showed that Busby committed acts of violence while acting as a "pimp" for Latimer and others, that he was a long-standing gang member,[202] that he had violently assaulted and injured Latimer, and that he had been arrested

---

[192] 35 RR 27.
[193] 35 RR 36-38.
[194] 35 RR 47.
[195] *See, e.g.,* 36 RR 58.
[196] 36 RR 57.
[197] *See generally* 33-34 RR.
[198] 33 RR 13-19, 192.
[199] 33 RR 72-80.
[200] 33 RR 86-89, 142-150, 154-58, 164-68, 174-78.
[201] 34 RR 35-38.
[202] 34 RR 5-143.

multiple times on drug and weapons charges.[203]   The jury found that Busby posed a future risk of dangerousness to society and that no mitigating factors warranted a life sentence.[204]

Busby alleges that his new mitigation evidence generally tends to show that (1) Busby was abandoned by his mother the first two years of his life and instead lived with his grandmother; (2) Busby and his sisters were abused by their mother and father and grew up in a violent household; (3) Busby's hometown was segregated and racially-biased; (4) Busby grew up in extreme poverty; (5) Busby was "slow" and suffered from intellectual disability and mental illness; (6) Busby was easily manipulated by women; and (7) Busby was addicted to crack, marijuana, and alcohol.[205]

Busby asserted that his mother did not obtain prenatal healthcare when pregnant with him.[206]   According to Busby's sisters, Busby's mother was physically violent with her children.  She would "whoop" them with a "belt, switch, shoe or extension cord."  His mother also physically attacked Busby's father and another male with whom she lived after Busby's father left.  Her children often witnessed the altercations.  In one incident, Busby's mother attempted to run over the man with whom she lived while Busby was in the vehicle with her.[207]  Busby's mother also stabbed a man with whom she lived in his hands with a butcher knife when he was attempting to deflect her attacks.[208]  One sister claimed that Busby's mother did not love Busby and would tell him that he was "just like [his] sorry-ass daddy."[209]   They also

---

[203] 34 RR 21-30, 48-60, 156-58.

[204] *Busby v. State*, 253 S.W.3d 661, 663 (Tex. Crim. App. 2008).

[205] *See* ROA.2451-58.

[206] ROA.2236.

[207] ROA.2566-67, 2575-76.

[208] ROA.2567.

[209] ROA.2566.

described Busby's father as a "drunk" and stated that Busby's "dad would hit him with anything" when he was inebriated.[210] One sister said that they were poor, Busby and his siblings were "hungry sometimes," and the water was once "cut off for about a week."[211] Both sisters described Busby as slow, irresponsible, and unhygienic.[212]

Other declarations said that Busby exhibited low intelligence, his family's income was low, his mother neglected him, and noted the absence of a father figure.[213] They also commented upon Busby's "mood swings" and mental health issues, including his attempt to commit suicide in his teenage years.[214] Several noted that Busby was a follower when it came to women, especially Latimer, who was described as his girlfriend.[215]

A declaration from a clinical psychologist opined that Busby experienced "repeated physical and emotional abuse and neglect," when he was a child and also "witnessed violent actions committed by his mother."[216] His declaration noted that while much of the "described emotional and behavioral problems are consistent" with post-traumatic stress disorder (PTSD), "it is impossible to determine if Mr. Busby would have met the criteria for [PTSD] in adolescence."[217] He did, however, diagnose Busby with bipolar disorder, anxiety disorder, and polysubstance dependence in remission.[218]

---

[210] ROA.2567, 2574.

[211] ROA.2576-77.

[212] ROA.2568-70, 2578.

[213] ROA.2581-83, 2584-85, 2586, 2588-89, 2945-46, 2947-48, 2949, 2950-51.

[214] ROA.2582, 2585-86, 2946, 2947.

[215] ROA.2946-51.

[216] ROA.2953.

[217] ROA.2961.

[218] ROA.2963.

No. 15-70008

Some of Busby's "new" evidence is not in fact new. It is cumulative of the evidence adduced at trial, as the federal district court found.[219] We concluded in *Parr v. Quarterman*[220] that though mitigation evidence may not have been presented "as effectively as it might have been," a petitioner could not show prejudice when the jury heard evidence regarding an unstable childhood and the "State's case on punishment was strong."[221] Similarly, Busby repeats much of the testimony elicited at trial regarding his childhood, intellectual acuity, and predispositions towards women and substance abuse. His sisters testified at trial, and while the additional, post-conviction statements from his sisters "undoubtedly provide[d] more details" of Busby's childhood, we held in *Newbury v. Stephens*[222] that evidence "of the same genre as that presented to the jury at trial" could not outweigh the state's "overwhelming" evidence of future dangerousness.[223] Indeed, when "the evidence of [] future dangerousness was overwhelming . . . . it is virtually impossible to establish prejudice."[224]

Busby's new mitigation evidence, considered with that adduced at trial, does not outweigh the State's aggravation evidence such that "there is a reasonable probability that at least one juror" would have recommended a life

---

[219] *Busby v. Stephens*, No. 4:09-CV-160-O, 2015 WL 1037460, at *12 (N.D. Tex. Mar. 10, 2015).

[220] 472 F.3d 245 (5th Cir. 2006).

[221] *Id.* at 258.

[222] 756 F.3d 850 (5th Cir. 2014) (per curiam).

[223] *Id.* at 873-74.

[224] *Ladd v. Cockrell*, 311 F.3d 349, 360 (5th Cir. 2002) (citing *Strickland v. Washington*, 466 U.S. 668, 698 (1984)).

sentence.[225]  He was therefore not prejudiced by his trial counsel's allegedly deficient mitigation investigation, and his IATC claim fails.[226]

The district court did not directly address Busby's contention that trial counsel was ineffective in discovering and presenting evidence that Busby is intellectually disabled.  However, trial counsel retained an expert to evaluate Busby.  It was that expert's opinion that the two IQ tests that he administered to Busby reflected that he was not intellectually disabled.  Trial counsel did not have the benefit of the Supreme Court's decisions, issued long after the trial, regarding IQ evidence.[227]  Busby has not offered any evidence that trial "counsel's representation fell below an objective standard of reasonableness" with regard to his investigation of Busby's intellectual functioning or presentation of evidence of Busby's intellectual functioning based on the standards of professionalism prevailing at the time.[228]  Additionally, even with the benefit of the assistance of three additional mental health experts during habeas proceedings, Busby has not been diagnosed as intellectually disabled.  Accordingly, assuming, without deciding, that Busby raised and adequately briefed in our court and in the federal district court a claim that trial counsel was ineffective in failing to contend before or during the state trial court conviction proceedings that Busby is intellectually disabled, the claim fails for lack of evidence that trial counsel should have disregarded the retained expert's opinion that Busby was not intellectually disabled.

\*        \*        \*

---

[225] *Wiggins v. Smith*, 539 U.S. 510, 537 (2003).

[226] *Strickland*, 466 U.S. at 697 ("[Courts] need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

[227] *See, e.g., Moore v. Texas*, 137 S. Ct. 1039 (2017); *Brumfield v. Cain*, 135 S. Ct. 2269 (2015); *Hall v. Florida*, 134 S. Ct. 1986 (2014).

[228] *Strickland*, 466 U.S. at 687-88.

No. 15-70008

For the foregoing reasons, we AFFIRM the judgment of the district court.