# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 21, 2023

Lyle W. Cayce
Clerk

———————

No. 22-40217

———————

WILLIAM DEWAYNE OWENS,

*Petitioner—Appellant*,

*versus*

BOBBY LUMPKIN, *Director, Texas Department of Criminal Justice, Correctional Institutions Division*,

*Respondent—Appellee.*

———————————————————

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 5:14-CV-165

———————————————————

Before DAVIS, SOUTHWICK, and OLDHAM, *Circuit Judges*.

PER CURIAM:[*]

A Texas state court convicted William DeWayne Owens of aggravated sexual assault of a child. After seeking relief in state court, Owens filed an application for a writ of habeas corpus under the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2254. The district court denied his petition. We affirm.

———————————————

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 22-40217

I.

William DeWayne Owens was charged with aggravated sexual assault of a child in Texas state court. The victim was his daughter "Julie," who was four years old at the time of the assault.[1] At his trial, Owens tried to admit evidence of sexual assault allegations Julie made against Billy Speights, Julie's mother's then-boyfriend, but the trial judge refused to admit this evidence on the grounds that it did not disprove the claims against Owens. Owens also sought police reports against Speights under *Brady v. Maryland*, 373 U.S. 83 (1963), but the prosecution claimed it did not have any *Brady* material. The jury convicted Owens and sentenced him to life imprisonment along with a fine of $10,000. His conviction and sentence were affirmed on direct appeal.

He then sought postconviction review in Texas state court. His claims were denied. He subsequently filed a petition for federal habeas review under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254. While his petition was pending in federal district court, he obtained the police report of Julie's allegations against Speights. The federal court stayed its proceedings so Owens could amend his state petition to include and exhaust his *Brady* claim. The Texas Criminal Court of Appeals ("TTCA") admonished the State for not producing the Speights police report when requested. But ultimately it concluded that this evidence was not material and denied his petition for relief in a unanimous opinion. The Supreme Court denied certiorari. *Owens v. Texas*, 139 S. Ct. 2742 (2019) (mem.).

Owens then sought and was granted permission to file an amended federal habeas petition to include his *Brady* claim. The district court denied

---

[1] "Julie" is a pseudonym used by the Texas state court.

2

relief as well as a certificate of appealability ("COA"). A judge of this court granted Owens a COA on his *Brady* claim.

## II.

To obtain relief under AEDPA, Owens must show that the state court's adjudication of his *Brady* claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Supreme Court refers to this provision as AEDPA's "relitigation bar." *E.g.*, *Harrington v. Richter*, 562 U.S. 86, 100 (2011). The bar "stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 102. But it does require a prisoner in state custody to "shoehorn his claim into one of its [two] narrow exceptions." *Langley v. Prince*, 926 F.3d 145, 155 (5th Cir. 2019) (en banc).

The first exception—for decisions that are "contrary to" clearly established Federal law—is the "narrower" one. *Id.* (quotation omitted). The applicant must identify a Supreme Court case that is "opposite to" or "materially indistinguishable" from the case at hand. *Terry Williams v. Taylor*, 529 U.S. 362, 413 (2000). Owens does not, so this prong does not apply.

The second exception—for decisions that involve an "unreasonable application" of clearly established Federal law—is "almost equally unforgiving." *Langley*, 926 F.3d at 156 (quotation omitted). "[A] prisoner must show far more than that the state court's decision was merely wrong or even clear error." *Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020) (per curiam) (quotation omitted); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." (quotation omitted));

*Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."); *Neal v. Puckett*, 286 F.3d 230, 236 (5th Cir. 2002) (en banc) (per curiam) ("[W]e have no authority to grant habeas corpus relief simply because we conclude, in our independent judgment, that a state supreme court's application of [federal law] is erroneous or incorrect."). "Rather, the relitigation bar forecloses relief unless the prisoner can show the state court was *so* wrong that the error was 'well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Langley*, 926 F.3d at 156 (quoting *Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (per curiam)); *see also Harrington*, 562 U.S. at 101. In other words, it must be "'beyond the realm of possibility that a fairminded jurist could' agree with the state court." *Langley*, 926 F.3d at 156 (quoting *Woods v. Etherton*, 578 U.S. 113, 118 (2016) (per curiam)). This demanding standard aligns with "the purpose of AEDPA . . . to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (quotation omitted). This standard is "difficult to meet" precisely "because it was meant to be." *Harrington*, 562 U.S. at 102.

Here, all agree that *Brady* is the relevant "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A *Brady* violation has three components: (1) the evidence must "be favorable to the accused, either because it is exculpatory, or because it is impeaching"; (2) the "evidence must have been suppressed by the State, either willfully or inadvertently"; and (3) the suppression must have resulted in "prejudice." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). We agree with the Court of Criminal Appeals that the first two prongs are satisfied here. The only question is whether this evidence is prejudicial.

No. 22-40217

The third prong—sometimes called *Brady* prejudice and sometimes called *Brady* materiality—requires the prisoner to show "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 280 (quotation omitted). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109–10 (1976). Rather, a defendant must show "the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler*, 527 U.S. at 281. And we cannot evaluate a piece of evidence in a vacuum. Instead, we must adjudge the materiality of a particular piece of evidence "in the context of the entire record." *Agurs*, 427 U.S. at 112; *see also Kyles v. Whitley*, 514 U.S. 419, 435 (1995) (requiring that the evidence "could reasonably be taken to put *the whole case* in such a different light as to undermine confidence in the verdict" (emphasis added)). And all of these cases—*Strickler*, *Agurs*, and *Kyles*— arose before AEDPA's enactment. So we must apply their legal rules through the deferential lens of AEDPA's relitigation bar. *See Harrington*, 562 U.S. at 105 (noting underlying constitutional rules and relitigation bar operate "in tandem" to create a "deferential" standard).

Here, the Texas Court of Criminal Appeals rejected Owens's claim because he failed to establish *Brady*'s third requirement, materiality. The question presented to us is not whether we would have concurred if we sat on that state court. *See id.* at 101–02. Rather, our question presented is whether the state court's application of *Brady* was so unreasonable that no fairminded jurist could agree with it. *See id.* at 101; *Woods*, 58 U.S. at 118; *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

No. 22-40217

We cannot conclude that the Texas Court of Criminal Appeals transgressed the line of fairmindedness in its unanimous decision in this case. That is for three principal reasons.

First, and most significantly, jurists of reason on the Court of Criminal Appeals could reasonably conclude the Speights report did not undermine Owen's guilt or conclusively determine that Julie was assaulted by only one man. Rather, the testimony at trial established that Julie called Owens "her daddy" and "Bubba." In the Speights report, Julie claimed she was assaulted by "Uncle Billy" (her name for Speights)—but she never disputed that she was *also* assaulted by Owens; she never suggested any confusion between the two men; nor did she ever claim that she was assaulted by only one man.

True, some parts of the police report could support the one-abuser theory. For example, Julie did not accuse Owens of abusing her in the police report. And Nora Mitchell, Julie's guardian beginning in June 2008, told investigators that she believed Julie confused the details between Speights and Owens. Although the issue is not free from doubt, we cannot say that the Court of Criminal Appeals was so unreasonable in its decision as to be unfairminded.

Second, jurists of reason on the state court could reasonably conclude that Owens's guilt stood independent from any allegations Julie also made against Speights. Most notably, Julie accused Owens of assaulting her in March 2008—months before she made her statements to police regarding Speights in August 2008. That undermines Owens's claim that Julie had a motive to falsely accuse Owens at the bequest of her mother to exonerate Speights. By the time Julie made her statements about Speights, she had *already* accused Owens.

To the extent the record taken as a whole could be read to suggest only one man assaulted Julie, the state courts could reasonably conclude it was

No. 22-40217

Owens. For example, Missy Davison, a forensic interviewer, testified that Julie told her that Owens sexually assaulted her. She concluded that Julie provided consistent details, and her testimony indicated that she was telling the truth. For example, Julie used "kid language" and provided sensory details. The forensic examiner also testified that Julie's behaviors during the interview indicated that she had been sexually abused. Mitchell also corroborated Julie's claim against Owens. She testified that when Julie came to live with her, she had a lot of nightmares and would cry to Mitchell "about how her daddy hurt her" and about how she was "afraid that her daddy [would] come and hurt her again." Julie's statements against Speights were much weaker by comparison. She provided multiple conflicting stories and insufficient details of the events. Mitchell could not corroborate any of the details Julie provided. And the investigator concluded that Julie was "unclear on exactly what happened." As a result, Speights was not charged for assaulting Julie.

Third and finally, while the Speights report could have provided additional impeachment value, fairminded jurists on the Texas Court of Criminal Appeals could reasonably conclude that value was unlikely to change the jury's decision. Owens was already able to impeach Julie for her claims about her abuser's hair color. Julie told the forensic examiner in her initial interview that her abuser had white hair. Owens did not have white hair at the time of the trial, and defense counsel was able to impeach Julie at trial on that point. The only thing trial counsel was not permitted to do was to blame Speights (who allegedly had bleached tips on his hair) for the assault. As the Texas Court of Criminal Appeals determined: "The information in the police report would have provided a stronger basis upon which to impeach Julie's identification of applicant, but not to the extent that there is a reasonable likelihood this information would have affected the jury's verdict or undermines our confidence in the verdict." ROA.2143.

\*     \*     \*

7

No. 22-40217

While some evidence suggests the police report may have been material, we can only grant Owens's petition if all fairminded jurists would disagree with the Texas Court of Criminal Appeals. Owens has not met that demanding standard.

AFFIRMED.