# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 4, 2025

Lyle W. Cayce
Clerk

No. 23-50223

---

JESUS JAIME JIMENEZ,

*Petitioner—Appellant*,

*versus*

ERIC GUERRERO, *Director, Texas Department of Criminal Justice, Correctional Institutions Division*,

*Respondent—Appellee*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:14-CV-420

---

Before KING, JONES, and OLDHAM, *Circuit Judges*.

ANDREW S. OLDHAM, *Circuit Judge*:

A Texas state jury convicted Jesus Jaime Jimenez of organized crime that involved violent robbery. The state trial court sentenced Jimenez to 50 years in prison. In this federal habeas case, Jimenez contends that his conviction was tainted by judicial bias. We deny relief.[1]

---

[1] Jimenez made two motions that were carried with the case. *First*, Jimenez's motion to appoint counsel is denied as moot because this case was decided without oral argument. *Second*, Jimenez's motion to expand the COA is denied for the reasons below.

I

We detail (A) the facts of Jimenez's case, (B) the facts underlying Jimenez's judicial-bias claim, and (C) the procedural history of this case.

A

Jimenez was a member of the Mexican Mafia. *Jimenez v. State*, 307 S.W.3d 325, 328 (Tex. App.—San Antonio 2009, pet. ref'd). In June 2005, Jimenez and five fellow mafiosi conspired to rob—and then violently robbed—several drug dealers of two cars (a 1995 Mustang and a 1996 Firebird), a Yamaha motorcycle, and some cash. *Ibid.* The State of Texas indicted Jimenez in a Kerr County court for organized crime in March 2006. At Jimenez's trial in April 2006, four of the mafiosi testified for the State. *Jimenez*, 307 S.W.3d at 329. Based on their testimony and other evidence, the jury convicted Jimenez of engaging in organized criminal activity and sentenced him to 50 years in prison. *Ibid.*

B

Judge Emil Karl Prohl presided over Jimenez's trial. The judicial-bias claim in this case stems from Judge Prohl's relationship with the Kerr County District Attorney, Ron Sutton.

Starting in 2002, Sutton began misappropriating monies collected under Texas's civil asset forfeiture statute. *Jimenez v. Lumpkin*, No. SA-14-CA-0420, 2023 WL 2290292, at *12 (W.D. Tex. Feb. 28, 2023). Between 2002 and 2008, Sutton misappropriated these funds to pay for travel expenses for himself, his wife, his employees, and his employees' spouses for their attendance at legal conferences. *Ibid.* These expenses included meals, lodging, transportation, airfare, and entertainment. *Ibid.* From 2003 to 2007, Sutton also misappropriated these funds to pay for the travel expenses of Judge Prohl

and his wife. *Ibid.* All in, Judge Prohl received over $33,000 from Sutton for trips to Maine, Alaska, Hawaii, and California. *Ibid.*

In July 2008, Jimenez and two co-defendants filed a complaint against Judge Prohl with the Texas State Commission on Judicial Conduct. *Ibid.* In 2009, Judge Prohl tendered his resignation from judicial office rather than face disciplinary action from the Commission. *Ibid.* In 2010, Judge Prohl pleaded guilty to one count of theft by a public servant in exchange for a probated two-year sentence. *Ibid.* In addition, he was required to pay a $2,500 fine and over $17,000 in restitution, perform 200 hours of community service, and surrender his law license. *Ibid.* Around the same time, Sutton pleaded guilty to two counts of misapplication of fiduciary funds and likewise received a probated two-year sentence, along with a $20,000 fine. *Id.* at *12 n.6.

## C

We detail the procedural background of (1) Jimenez's direct appeals, (2) his state habeas applications, and (3) his federal habeas petitions.

### 1

Jimenez first appealed through Texas's court system. He raised 11 issues on direct appeal in the Fourth Court of Appeals. *Jimenez*, 307 S.W.3d at 328. That court affirmed the jury's verdict. *Id.* at 335. Next, Jimenez filed a Petition for Discretionary Review in the Texas Court of Criminal Appeals ("TCCA"). The TCCA refused the petition. *Jimenez*, 2023 WL 2290292, at *1 (citing *Jimenez v. State*, No. PD-0046-10 (Tex. Crim. App. May 5, 2010)).

### 2

Next, Jimenez filed a state habeas corpus application, challenging his conviction on federal constitutional grounds. *Ibid.* He alleged ineffective

assistance of counsel, *Brady* violations, and judicial bias. Because the trial court did not act on the application within 20 days, the application was automatically transmitted to the TCCA. *See* Tex. Code Crim. Proc. art. 11.07 § 3(c).

The TCCA remanded the state habeas application to the trial court to make findings of fact and conclusions of law regarding Jimenez's claims for ineffective assistance of counsel, *Brady* violations, and "any other findings and conclusions that it deems relevant and appropriate to the disposition of Applicant's claim for habeas corpus relief." *Ex parte Jimenez*, No. WR-76,229-01, 2012 WL 1554206, at *1 (Tex. Crim. App. May 2, 2012) (per curiam).

In September 2012, the state trial court held a hearing on remand. After the hearing, the trial court—Emerson, J., presiding—issued its findings of fact and conclusions of law, which rejected Jimenez's ineffective-assistance-of-counsel and *Brady* claims. *See* ROA.7772–75. In February 2014, the TCCA adopted the trial court's recommendation and denied relief without a written order. *Jimenez*, 2023 WL 2290292, at *1.

3

Jimenez then petitioned *pro se* for a writ of habeas corpus in federal district court. *Jimenez*, 2023 WL 2290292, at *2. He reasserted his ineffective-assistance-of-counsel, *Brady*, and judicial-bias claims. *Ibid.*

The district court denied Jimenez's petition with prejudice because it was time-barred by the one-year statute of limitations imposed by 28 U.S.C. § 2244(d) and Jimenez did not show extraordinary circumstances that entitled him to equitable tolling. *Jimenez v. Stephens*, No. SA-14-CA-420, 2015 WL 13955984, at *2 (W.D. Tex. Feb. 17, 2015) (citing *Holland v. Florida*, 560 U.S. 631 (2010)). The district court also denied Jimenez a certificate of appealability ("COA"). *Ibid.*; *see* Fed. R. App. P. 22(b). Jimenez

appealed, and a panel of this court granted Jimenez a COA, appointed him counsel, vacated the district court's decision, and remanded for further consideration of whether equitable tolling was appropriate in Jimenez's petition. *Jimenez v. Hunter*, 741 F. App'x 189, 192–94 (5th Cir. 2018).

On remand, after taking additional briefing, the district court again denied Jimenez's petition with prejudice because it was time-barred by the one-year statute of limitations imposed by 28 U.S.C. § 2244(d). *Jimenez v. Davis*, No. SA-14-CA-0420, at 14 (W.D. Tex. May 9, 2019). The district court found equitable tolling inappropriate because Jimenez "failed to assert any specific facts showing that he was prevented, despite the exercise of due diligence on his part, from timely filing his federal habeas corpus petition." *Ibid.* The district court denied Jimenez a COA. *Ibid.* Jimenez appealed again, and a panel of this court held that Jimenez was entitled to equitable tolling. *Jimenez v. Butcher*, 839 F. App'x 918, 920 (5th Cir. 2021) (per curiam). The panel vacated and remanded for the district court to consider the merits of Jimenez's petition. *Ibid.*

On remand, the district court denied relief and dismissed Jimenez's petition with prejudice. *Jimenez*, 2023 WL 2290292, at *17. In particular, the district court held that Jimenez's ineffective-assistance-of-counsel and *Brady* claims were barred under the relitigation bar imposed by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d). *Id.* at *13, 16. Because the district court was not certain whether the state court adjudicated Jimenez's judicial-bias claim on the merits, it reviewed that claim *de novo* "out of an abundance of caution." *Id.* at *12 n.5. The district court denied relief for that claim too, because "under clearly establish[ed] Fifth Circuit and Supreme Court precedent, Judge Prohl's inappropriate actions off the bench d[id] not support a finding that he was either actually or presumptively biased against Petitioner in this case." *Id.* at *14. The district court did not address Jimenez's cumulative-prejudice claim, which was

asserted for the first time in his reply brief. And the district court granted Jimenez a COA for his judicial-bias claim but not for his ineffective-assistance-of-counsel and *Brady* claims. *Id.* at *16.

Jimenez timely appealed. He also moved for the appointment of counsel and to expand his COA to include his ineffective-assistance-of-counsel, *Brady*, and cumulative-prejudice claims.

We have jurisdiction over the district court's denial of Jimenez's judicial-bias claim, which was a final order disposing of the merits of a habeas corpus proceeding. 28 U.S.C. § 2253(a); *see also Harbison v. Bell*, 556 U.S. 180, 183 (2009). And we have jurisdiction to decide Jimenez's application for a COA for his ineffective-assistance-of-counsel and *Brady* claims. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b)(1); *see also Buck v. Davis*, 580 U.S. 100, 115 (2017).

## II

"Federal habeas review of state convictions . . . intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (quotations omitted). That explains why "undoing a final state-court judgment" via habeas relief "is an extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system." *Brown v. Davenport*, 596 U.S. 118, 133 (2022) (quotation omitted).

We first (A) explain why AEDPA's demanding strictures apply to Jimenez's judicial-bias claim. We then (B) hold that Jimenez cannot satisfy them.

## A

We begin, as in every AEDPA case, with the appropriate standard of review. District courts can "deny writs of habeas corpus under § 2254 by

engaging in *de novo* review when it is unclear whether AEDPA[’s relitigation bar] applies.” *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010). And in this case, “out of an abundance of caution,” *Jimenez*, 2023 WL 2290292, at *12 n.5, the district court chose the alternative, *de novo* route.

In our view, however, AEDPA’s relitigation bar clearly applies to the judicial-bias claim here. We explain (1) the background principles of law and (2) their application to Jimenez’s petition.

1

AEDPA’s relitigation bar applies to claims that were “adjudicated on the merits in State court.” 28 U.S.C. § 2254(d). The Supreme Court has repeatedly confirmed that we must presume a federal claim was adjudicated on the merits when a state court rejects it without explicitly addressing it. *See Johnson v. Williams*, 568 U.S. 289, 293 (2013) (citing *Richter*, 562 U.S. 86). In *Richter*, for example, the Supreme Court clarified that the presumption of merits adjudication applies to summary denials. 562 U.S. at 98–99. Indeed, a state court is not even required “to give reasons before its decision can be deemed to have been ‘adjudicated on the merits.’” *Id.* at 100. The Supreme Court doubled down on this principle in *Williams*. There, the Court clarified that the “*Richter* presumption” of merits adjudication also applies when the state court addressed “some but not all of a defendant’s claims.” 568 U.S. at 298. In other words, “state courts need not even discuss separately every single claim.” *Dunn v. Reeves*, 594 U.S. 731, 743 (2021) (quotation omitted).

That makes good sense given the burdensome “caseloads shouldered by many state appellate courts.” *Williams*, 568 U.S. at 300. State courts have good reasons not to “address[] every single claim” that a petitioner cooks up. *Id.* at 298. Among other reasons, state courts might consider a “fleeting reference” to a constitutional provision or judicial precedent not to be

"sufficient to raise a separate federal claim." *Id.* at 299. Or they might consider some claims "too insubstantial to merit discussion." *Ibid.*

The *Richter* presumption of merits adjudication is "not irrebuttable," but it will "be rebutted only in unusual circumstances." *Id.* at 302. The heavy burden of rebuttal falls on the petitioner. *See Hoffman v. Cain*, 752 F.3d 430, 439 (5th Cir. 2014) (citing *Williams*, 568 U.S. at 301–02). For claims that were properly presented to a state court, a petitioner rebuts the presumption of merits adjudication only if he offers evidence of "state-law procedural principles" that are contrary to the presumption, *Richter*, 562 U.S. at 99, or evidence that "leads *very clearly* to the conclusion that a federal claim was inadvertently overlooked in state court," *Williams*, 568 U.S. at 303 (emphasis added). But "pure speculation" does not cut it, *Richter*, 562 U.S. at 100, and "such a scenario is unlikely" to arise, *Lucio v. Lumpkin*, 987 F.3d 451, 465 (5th Cir. 2021) (en banc) (plurality opinion).[2]

---

[2] On a handful of occasions, panels of this court have applied a three-part standard to determine whether a habeas petitioner has rebutted the *Richter* presumption. That standard considers: "(1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state courts' opinions suggest reliance upon procedural grounds rather than a determination on the merits." *Grant v. Vannoy*, 829 F. App'x 23, 30 (5th Cir. 2020) (per curiam) (quoting *Woodfox v. Cain*, 772 F.3d 358, 371 (5th Cir. 2014)). The standard apparently applies only when it is "unclear whether a state court's opinion[] adjudicate[d] a claim on the merits" or was "procedural." *Robinson v. Louisiana*, 606 F. App'x 199, 203 (5th Cir. 2015) (per curiam) (quoting *Woodfox v. Cain*, 609 F.3d 774, 794 (5th Cir. 2010)). If our judge-made standard confirms that a state court's "denial [was] on procedural grounds rather than on the merits," the petitioner's "claims are therefore . . . procedurally defaulted." *Coleman v. Goodwin*, 833 F.3d 537, 541 (5th Cir. 2016). But this judge-made standard stems from pre-*Richter* circuit precedent, *see Woodfox*, 609 F.3d at 794 (citing *Mercadel v. Cain*, 179 F.3d 271, 274 (5th Cir. 1999)), and cannot replace the test provided by the Supreme Court in *Williams*, *see Lucio*, 987 F.3d at 464–65 (plurality opinion) (applying *Williams* rather than our pre-*Richter* three-part standard).

As Justice Scalia pointed out, there are only two possible judgments denying relief: "adjudication on the merits" and "resolution of a claim on procedural grounds." *Williams*, 568 U.S. at 308 (Scalia, J., concurring in the judgment) (quotation omitted). So to clear the very high bar of showing "that a federal claim was inadvertently overlooked in state court," *Williams*, 568 U.S. at 303 (majority opinion), the petitioner needs to sail the exceedingly narrow strait between Scylla and Charybdis: He must show his claim was somehow *not* adjudicated on the merits yet also *was* properly presented to the state court such that it was *not* procedurally defaulted. That run is probably impossible in practice, which is maybe why no habeas petitioner has rebutted the *Richter* presumption in the Supreme Court since *Williams*.

2

Jimenez's claim cruises straight into "Scylla's crag." HOMER, THE ODYSSEY 274 (Robert Fagles trans., 1996). He has not met his burden under *Williams* to adduce evidence that "very clearly" shows his judicial-bias claim was "inadvertently overlooked in state court." 568 U.S. at 303. Rather than apply this standard, the district court concluded that "the state court appear-[ed] to have ignored the issue entirely." *Jimenez*, 2023 WL 2290292, at *12. But Jimenez does nothing to rebut the presumption that the state courts in this case considered his judicial-bias claim too "fleeting" to "raise a separate federal claim" or "too insubstantial to merit discussion." *Williams*, 568 U.S. at 299.

On the contrary, the record and Texas state procedure "very clearly" show that the state courts were aware of Jimenez's judicial-bias claim and rejected it anyway. The back and forth between the trial court and the TCCA confirm that Jimenez's judicial-bias claim was adjudicated on the merits, not overlooked.

Recall the lengthy procedural history of this case. Jimenez's state postconviction application alleged three claims: ineffective assistance of counsel, *Brady* violations, and judicial bias. After that application was referred by operation of law to the TCCA, the Court of Criminal Appeals acknowledged that Jimenez brought claims for ineffective assistance of counsel and *Brady* violations, "among other things." *Jimenez*, 2012 WL 1554206, at *1. And the TCCA remanded to the trial court to make findings of fact and conclusions of law regarding Jimenez's claims for ineffective assistance of counsel, *Brady* violations, and "any other findings and conclusions that it deems relevant and appropriate." *Ibid.*

On remand to the trial court, the parties disputed the scope of the TCCA's order. Counsel for Jimenez, Richard Ellison, opened the hearing by stating that there were "three main arguments" at issue on remand: Jimenez's claims for *Brady* violations, ineffective assistance of counsel, and "denial of a fair tribunal." ROA.6528. Counsel for the State, David Schulman, countered that "the bias of the former judge" was:

> not part of the remand. That was in the writ of habeas corpus, but no relief was recommended by this Court. It went to the Court of Criminal Appeals and they remanded, but only on the ineffective assistance and *Brady*, so we would object to anything coming in that pertains to the bias of the trial judge . . . as not part of the remand.

ROA.6529. Ellison replied that the TCCA's remand order referred, in addition to the ineffective-assistance-of-counsel and *Brady* claims, to "any other issues that the trial court wants to examine." ROA.6530. But the trial court ruled: "The only two issues the Court's going to address today are the ineffective assistance of counsel and the *Brady* material." *Ibid.*

After this hearing, the trial court concluded that Jimenez's ineffective-assistance-of-counsel and *Brady* claims failed. *See* ROA.7772–75.

The TCCA then adopted the trial court's recommendation and rendered its judgment on Jimenez's application: "DENIED WITHOUT WRITTEN ORDER ON FINDINGS OF TRIAL COURT AFTER HEARING." ROA.7934; *see also Jimenez*, 2023 WL 2290292, at *1.

The clear implication from this history is that the TCCA summarily denied the judicial-bias claim on the merits not once but twice. The TCCA did not mention the claim in its remand order. And the trial court on remand construed the TCCA's first order to reject the claim. Could the trial court have erred in its understanding of the remand order, as Mr. Ellison argued on Jimenez's behalf? No, because when the case went back to the TCCA a second time after the remand hearing, the Court of Criminal Appeals summarily denied relief "ON FINDINGS OF TRIAL COURT AFTER HEARING." ROA.7934.

In any event, Jimenez does not, and could not on this record, offer any evidence that "leads *very clearly* to the conclusion" that his judicial-bias claim "was inadvertently overlooked in state court." *Williams*, 568 U.S. at 303 (emphasis added). Even on a blank slate, the state courts are entitled to the presumption that their denials of this claim were on the merits. *Id.* at 298. But here, there is ample evidence that the trial court and the TCCA were well aware of the judicial-bias claim. The Texas courts' terse acknowledgement of the judicial-bias claim, beside their lengthier treatment of the other two claims, means the state courts "simply regard[ed] [the] claim as too insubstantial to merit discussion." *Id.* at 299.

Jimenez has not pulled off the exceedingly rare rebuttal of the *Richter* presumption. *See id.* at 302. His judicial-bias claim was adjudicated on the merits, and AEDPA's relitigation bar applies to it.

B

We now turn to whether Jimenez clears AEDPA's "relitigation bar." *Richter*, 562 U.S. at 100. As its name suggests, the relitigation bar imposes a nearly "complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 102. AEDPA thus ensures that the writ of habeas corpus serves only as a "guard against extreme malfunctions in the state criminal justice systems" and not as "a substitute for ordinary error correction through appeal." *Id.* at 102–03 (quotation omitted).

We (1) explain what overcoming that hurdle requires and (2) hold that Jimenez fails to make that showing.

1

To surmount AEDPA's relitigation bar, a petitioner must show that the state court's adjudication of the relevant claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). Clearly established federal law "refers to the holdings, as opposed to the dicta," of the Supreme Court's "decisions as of the time of the relevant state-court decision." *Terry Williams v. Taylor*, 529 U.S. 362, 412 (2000). "[A] determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As relevant to Jimenez's challenge, AEDPA requires him to "shoehorn his claim into one of two narrow exceptions." *Senn v. Lumpkin*, 116 F.4th 334, 339 (5th Cir. 2024) (quotation omitted), *cert. denied sub nom. Senn v. Guerrero*, No. 24-6123, 2025 WL 581721 (U.S. Feb. 24, 2025).

*First*, he can show that the state-court decision was "contrary to . . . clearly established Federal law." 28 U.S.C. § 2254(d)(1). "A state-court decision is contrary to clearly established federal law only if it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if it resolves a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Langley v. Prince*, 926 F.3d 145, 156 (5th Cir. 2019) (en banc) (quoting *Terry Williams*, 529 U.S. at 413) (quotation omitted).

*Second*, he can show that the state-court decision involved an "unreasonable application of . . . clearly established Federal law." 28 U.S.C. § 2254(d)(1). This standard requires a prisoner to "show far more than that the state court's decision was merely wrong or even clear error." *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (per curiam) (quotation omitted). "Rather, the relitigation bar forecloses relief unless the prisoner can show the state court was *so* wrong that the error was 'well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Langley*, 926 F.3d at 156 (quoting *Shoop v. Hill*, 586 U.S. 45, 48 (2019) (per curiam)). It must be " 'beyond the realm of possibility that a fairminded jurist could' agree with the state court." *Ibid.* (quoting *Woods v. Etherton*, 578 U.S. 113, 119 (2016) (per curiam)).

"Finally, even if a petitioner can shoehorn his claim into one of the relitigation bar's exceptions, he still must show, on de novo review," *Senn*, 116 F.4th at 339 (quotation omitted), that he is "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a).

## 2

### a

Jimenez's judicial-bias claim satisfies neither exception, so he cannot clear the relitigation bar.

The substance of Jimenez's claim is that Judge Prohl, who presided over his trial, was sufficiently biased against him that his Fourteenth Amendment Due Process rights were violated. The theory is that Judge Prohl was not impartial because he had a personal interest in Jimenez's case due to the misappropriated travel reimbursements he received from the District Attorney, Ron Sutton, that led to the judge's resignation and guilty plea for theft by a public servant. *See supra*, Part I.B. Jimenez contends the improper gifts were bribes for favorable rulings against Jimenez, namely that Judge Prohl (1) denied Jimenez's request for a continuance on the day of trial; (2) held a "'secret' bond reduction hearing" for one of the State's witnesses; (3) excluded a defense witness for violation of the sequestration rule; and (4) allowed the State to put on an improper closing argument. *Jimenez*, 2023 WL 2290292, at *13. Jimenez seems to have dropped discussion of the fourth ruling on appeal.

"[M]ost matters relating to judicial disqualification do not rise to a constitutional level." *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009) (quoting *FTC v. Cement Inst.*, 333 U.S. 683, 702 (1948)). The Due Process Clause sets a "constitutional floor, not a uniform standard," *Bracy v. Gramley*, 520 U.S. 899, 904 (1997), and leaves "matters of kinship, personal bias, state policy, [and] remoteness of interest" to "legislative discretion," *Tumey v. Ohio*, 273 U.S. 510, 523 (1927).

Constitutional due process requires a judge to recuse only in two situations: First, when evidence shows the judge has an actual "direct, personal, substantial pecuniary interest" in the instant case. *Ibid.* Second, where objective standards show that "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Caperton*, 556 U.S. at 877 (quoting *Withrow v. Larkin,* 421 U.S. 35, 47 (1975)). The Supreme Court has found such "presumptive bias" to exist in cases where the judge had a pecuniary interest in a case's outcome, was the target of

personal abuse or criticism from a party, or had the dual role of both investigating and adjudicating the same disputes. *Buntion v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008); *see also id.* n.4 (collecting cases). Either form of bias "is not lightly established," *Richardson v. Quarterman*, 537 F.3d 466, 474 (5th Cir. 2008) (quotation omitted), and requires "extreme facts," *Caperton*, 556 U.S. at 887.

b

Under the relitigation bar, Jimenez must identify "clearly established Federal law, as determined by the Supreme Court of the United States," that is "contrary to" the outcome in his case. 28 U.S.C. § 2254(d)(1). He can do so only by identifying a Supreme Court case that is "materially indistinguishable" from his own. *Terry Williams*, 529 U.S. at 413. Alternatively, Jimenez must show that "no fairminded jurist" could agree with the state court's application of clearly established Supreme Court precedent. *Etherton*, 578 U.S. at 117. If "disagreement is possible, then the petitioner's claim must be denied." *Sexton v. Beaudreaux*, 585 U.S. 961, 965 (2018) (per curiam). Furthermore, "if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision." *White v. Woodall*, 572 U.S. 415, 426 (2014) (quotation omitted).[3]

We agree with the district court that Judge Prohl's actions were "troubling," "inappropriate," and "unacceptable." *Jimenez*, 2023 WL

---

[3] "For each claim governed by AEDPA's relitigation bar, we must identify the relevant state-court 'decision.'" *Lucio*, 987 F.3d at 465 (plurality opinion) (quoting 28 U.S.C. § 2254(d)(1), (2)). When the most recent state-court decision comes without reasons, as here, we must "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). But here, no state-court decision ever provided a rationale, so *Wilson*'s look-through doctrine is inapplicable. *See id.* at 131–32.

2290292, at *13. But that does not mean that Judge Prohl was biased against Jimenez. "Bias is a difficult claim to sustain under AEDPA because the Supreme Court's" precedents addressing judicial bias have "acknowledged that what degree or kind of interest is sufficient to disqualify a judge from sitting cannot be defined with precision." *Buntion*, 524 F.3d at 672 (quoting *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 822 (1986)) (quotation omitted).

Although Jimenez offers several Supreme Court cases, none gets him over either relitigation bar. *See* Blue Br. at 26 (citing *Caperton*, 556 U.S. 868; *Bracy*, 520 U.S. 899; *Tumey*, 273 U.S. 510; and *Edwards v. Balisok*, 520 U.S. 641 (1997)).[4] All the cases he cites are neither indistinguishable from his own nor unreasonably applied.

Start with *Caperton*. In that case, the Supreme Court held that a West Virginia appellate judge's refusal to recuse from an appeal violated due process. A jury awarded plaintiffs $50 million from a coal company. 556 U.S. at 872. After the jury verdict but before appeal, the defendant coal company's CEO spent $3 million to help get the appellate judge elected and therefore seated on the coal company's case. *Id.* at 873. The $3 million spent by the

---

[4] We note that one precedent cited by Jimenez, *Williams v. Pennsylvania*, 579 U.S. 1 (2016), was decided after the TCCA's 2014 decision. Accordingly, AEDPA bars consideration of it. *See Terry Williams*, 529 U.S. at 412.

We also summarily distinguish *Balisok*, which is not "materially indistinguishable" from Jimenez's case. In that case, the Supreme Court held only that a "claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983." 520 U.S. at 648. It contained no holding about judicial bias or due process.

Finally, for completeness, we also distinguish *Withrow*, 421 U.S. 35, which Jimenez does not brief on appeal but did cite in his district court complaint. That case involved a state medical board that both investigated and administratively adjudicated the suspension of a doctor's license and ultimately found no due process violation. *Id.* at 54–55. That case is plainly inapposite to Jimenez's.

CEO dwarfed the roughly $1 million spent by the judge's own campaign committee. *Ibid.* The Supreme Court called this an "extraordinary situation," *id.* at 887, and concluded that the judge would "feel a debt of gratitude" to the CEO "for his extraordinary efforts to get him elected," *id.* at 882.

Jimenez's case is nothing like *Caperton*. There, unlike here, the payments made to help the judge came from a party with a case pending before the judge. The payments were timed to occur at a time when the defendant "had a vested stake in the outcome" of Caperton's case *in particular*. *Id.* at 886. And they had a "significant and disproportionate influence" on the judge's election. *Ibid.* Here, Sutton's payments (totaling $33,000 over four years) were not so timed, did not implicate Jimenez's case in particular, and did not seem to have a significant or disproportionate influence on the judge—they allowed him to go on vacations to legal conferences.

Next take *Bracy*. There, the extraordinary situation was that the judge who convicted Bracy "was later convicted of taking bribes" from criminal defendants to fix their cases. 520 U.S. at 901. Bracy's judicial-bias theory was that the judge, who did not take a bribe in Bracy's case, convicted Bracy to "deflect suspicion that he was taking bribes in other cases." *Ibid.* The Court held that Bracy had shown good cause for discovery on his claim. *Id.* at 908. But the Court never reached the questions of whether the judge was partial in Bracy's case and whether that partiality violated due process.

The differences between *Bracy* and Jimenez's case are numerous: Bracy alleged a theory that implicated partiality in his own case as opposed to all cases heard by the judge. *Id.* at 906. He proffered some evidence—other than unfavorable rulings—tending to support that theory, including the fact that his appointed counsel was a former associate of the judge who may have thrown the trial. *Id.* at 906–07. And of course, in *Bracy*, the court ruled only on a discovery motion. None of these salient facts are present here.

Finally, consider *Tumey*. That case involved a judge who received no money from a party or lawyer yet "had a financial interest in the outcome of a case." *Caperton*, 556 U.S. at 877. There, a state statute authorized the mayor of North College Hill, Ohio, to sit as a judge on a Prohibition-era liquor court, which tried alcohol possession cases without a jury. *Tumey*, 273 U.S. at 514–517. The statute created a structural bias problem that violated due process in two ways. First, the statute provided for the mayor-judge to receive "compensation for hearing such cases" but *only if he convicted the defendant. Id.* at 520. Second, the mayor-judge benefitted from other fines that were paid into his village's treasury. *Id.* at 522. Chief Justice Taft concluded that the arrangement violated due process "both because of [the mayor-judge's] direct pecuniary interest in the outcome, and because of his official motive to convict and to graduate the fine to help the financial needs of the village." *Id.* at 535.

This case is not close to *Tumey*. Jimenez was convicted by a jury; the liquor court in Tumey had no jury. Here, there was no structural bias that gave Judge Prohl a personal, pecuniary interest for ruling against Jimenez to collect fines. No statute guaranteed that money was going to flow into Judge Prohl's pocket only if Jimenez were convicted. There is no evidence here that Judge Prohl's travel reimbursements were contingent on ruling a particular way, or that the D.A.'s misappropriation of state money had anything to do with cases at all. Nor, obviously, was Judge Prohl benefitting in a separate official capacity from the payment of fines into a municipality's fisc.

\*

We cannot say that the state court's decision to deny Jimenez's judicial-bias claim was contrary to, or an unreasonable application of, the Supreme Court's clearly established precedent. Accordingly, AEDPA's re-litigation bar requires us to deny his claim.

## III

Finally, we consider and deny Jimenez's motion to expand the COA to include his ineffective-assistance-of-counsel and *Brady* claims.[5]

A state prisoner "has no automatic right to appeal" a federal district court's denial of his habeas petition. *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003). To appeal, he must first obtain a COA from a district or circuit judge. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A judge may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). That standard requires an applicant to establish that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 580 U.S. at 115 (quoting *Miller-El*, 537 U.S. at 327). This is a "threshold question [that] should be decided without full consideration of the factual or legal bases adduced in support of the claims." *Ibid.* (quotation omitted). In other words, the question is whether the district court's "decision was debatable." *Id.* at 116 (quoting *Miller-El*, 537 U.S. at 327).

Here, the correctness of the district court's denial of Jimenez's ineffective-assistance-of-counsel and *Brady* claims was not debatable. Neither was its decision not to grant Jimenez a COA on those claims. *See Jimenez*, 2023 WL 2290292, at *16. For the reasons given in the district court's thorough opinion, *see id.* at *3–11, *14–16, we agree that Jimenez has

---

[5] We also decline to address Jimenez's "cumulative prejudice" claim. *See* Blue Br. at 36. He never asserted this claim in state court, and he raised it for the first time in his reply brief in the district court. This argument is procedurally barred for the failure to exhaust state remedies. *See* 28 U.S.C. § 2254(b)(1)(A).

not made a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2).

\* \* \*

Jimenez's motion for appointment of counsel is DENIED as moot. Jimenez's motion to expand the certificate of appealability is DENIED. The district court's judgment is AFFIRMED, and habeas relief is DENIED.